IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

WHITE RIVER HARDWOODS-WOODWORKS, INC.                              PLAINTIFF

v.                              Case No. _____

PENNSYLVANIA LUMBERMENS MUTUAL                                     DEFENDANT
INSURANCE COMPANY

## COMPLAINT

For its Complaint for damages and a declaration of the respective rights and responsibilities of the parties stemming from Defendant Pennsylvania Lumbermens Mutual Insurance Company's breach of its insurance agreement, Plaintiff, White River Hardwoods-Woodworks, Inc., states and alleges as follows:

### PARTIES

1. Plaintiff, White River Hardwoods-Woodworks, Inc. ("Hardwoods"), is a corporation organized under Arkansas law with its principal place of business in Fayetteville, Arkansas. Hardwoods was founded in 1977. Hardwoods is family-owned and specializes in the design and manufacture of hardwood mouldings, corbels, and columns, as well as millwork.

2. Upon information and belief, Defendant, Pennsylvania Lumbermens Mutual Insurance Company ("Lumbermens"), is an insurance company organized in Pennsylvania with its principal place of business at One Commerce Square, 2005 Market St., Suite 1200, Philadelphia, Pennsylvania 19103. Lumbermens is licensed to conduct business in Arkansas. Lumbermens is a property and casualty insurance company providing coverage to wood-related businesses such as Hardwoods.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331-1332 because there is a diversity of citizenship between the parties, and the amount in controversy, exclusive of interest and costs, exceeds the amount required for diversity jurisdiction.

4. Venue over this action is proper in this District under 28 U.S.C. § 1391 because, amongst other things, the insurance policy was issued and the facts that gave rise to this Complaint occurred in this District.

## STATEMENT OF FACTS

### A. HARDWOODS' EMPLOYEE-THEFT LOSS

5. Jimmy D. Fant, Jr. was employed as an accountant for Hardwoods and its related entities from 1999 until January 11, 2023.

6. Fant served as Chief Financial Officer of Hardwoods from 2015, during which time he used at least four (4) different schemes to embezzle over five million dollars ($5,000,000.00) from Hardwoods: (1) "$3,981,971.66 by paying himself unauthorized 'commissions' starting in 2014," with nearly one million dollars of commissions paid in 2022; (2) $69,124.88 in "unauthorized [401K] contributions paid by [Hardwoods] on behalf of Fant"; (3) $85,333.27 in embezzled funds to repay loans that Fant "had borrowed against his 401K"; and (4) $1,131,162.57 from two business accounts maintained for associated businesses of Hardwoods, Matrix Investment, LLC and Dromborg Castle, LLC[1] *U.S. v. Fant*, U.S. District Court for the Western District of Arkansas – Fayetteville Division, 5:23-cv-50056-TLB

---

[1] Matrix Investment, LLC is an Arkansas limited liability company listed as an additional insured under Hardwoods' policies. Castle Dromborg, LLC is a related Arkansas limited liability company.

7. Fant engaged in significant efforts to manipulate Hardwoods' financial records to avoid detection of his theft scheme. Fant also took advantage of his position as CFO to disguise improper payments to himself and to circumvent control features.

8. In January 2023, Hardwoods discovered Fant's theft schemes and notified law enforcement. Through the investigation, Hardwoods learned that, for many years going back to at least 2014 until his 2023 retirement, Fant carried out the unlawful taking of Hardwoods' property to the deprivation of Hardwoods.

9. Fant was indicted on criminal charges related to his financial crimes (wire fraud/money laundering). *See*, Information, Document No. 5, *U.S. v. Fant*, U.S. District Court for the Western District of Arkansas – Fayetteville Division, 5:23-cv-50056-TLB.

10. On September 29, 2023, Fant pled guilty to one count of wire fraud and one count of money laundering and, upon information and belief, will be sentenced on April 3, 2024. *Id.* Fant will also be ordered to pay Hardwoods restitution.

B. **HARDWOODS' CRIME AND FIDELITY INSURANCE COVERAGE WITH LUMBERMENS**

11. Hardwoods was insured by Lumbermens Crime and Fidelity Coverage at all times relevant to Fant's theft schemes. Lumbermens issued coverage to Hardwoods via seven consecutive one-year commercial insurance policies. Each insurance policy covers a different policy period and bears a different policy number: 03-W020-01-14; 03-W020-01-16; 03-W020-01-18; 03-W020-01-19; 03-W020-01-20; 03-W020-01-21; 03-W020-01-22 ("Crime Policies" or "Crime Policy").

12. Hardwoods is the named Insured under the Crime Policies. In addition, Hardwoods paid separate policy premiums for each of the one-year Crime Policies.

13. The Declarations of the Crime Policies provide for a $50,000.00 limit of insurance per occurrence with a $1,000.00 deductible amount per occurrence. See, Exhibit "A", Crime and Fidelity Coverage Part Declarations Pages for Crime Policies.

14. The Crime Policy in effect in January 2023 was Policy Number 03-W020-01-22 (policy period of 07/01/2022 to 07/01/2023).

15. The Commercial Crime Coverage Form for Policy Number 03-W020-01-22, sets forth the Crime Policy's Insuring Agreement and states:

**A. Insuring Agreements**

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain directly from an "occurrence" taking place during the Policy Period shown in the Declarations, except as provided in the Loss Sustained During Prior Insurance Conditions **E.1.l.** and **E.1.m.**, which is discovered by a designated person during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period to Discover Loss Condition **E.1.h.**:

**1. Fidelity**

  **a. Employee Theft**

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

For purposes of this Insuring Agreement, "theft" includes forgery.

Commercial Crime Coverage Form, attached hereto as Exhibit "B" at p. 1, **A.1.a.**

16. Under the Commercial Crime Coverage Form, the term "occurrence" under Section **A.1.a** is defined as:

(1) An individual act;
(2) The combined total of all separate acts, whether or not related; or
(3) A series of acts, whether or not related;
Committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, except as provided under the Loss Sustained During Prior Insurance Conditions **E.1.l.** and **E.1.m.**

*Id*. at p. 20.

17. Under the Commercial Crime Coverage Form, the term "theft" is generally defined as the "unlawful taking of property to the deprivation of the Insured." I*d*. at p. 21.

18. The United States' allegations against Fant stated multiple occurrences under Lumbermens' definitions in each of its Crime Policies. As such, Lumbermens had a duty to provide insurance coverage to Hardwoods for each occurrence under each of its policies.

### C. HARDWOODS' INSURANCE CLAIM (CLAIM NO. 2023P00135)

19. On March 16, 2023, Hardwoods timely notified Pennsylvania Lumbermens Mutual Insurance Company of its employee theft losses and demanded fidelity coverage for multiple occurrences during the relevant seven coverage periods.

20. Thereafter, Hardwoods provided Lumbermens with documentation, data, and information regarding Fant's schemes and its losses.

21. Lumbermens responded that the loss constitutes a single occurrence discovered during the 2022-2023 Policy's policy period, and pursuant to the Prior Insurance Condition, $50,000.00 is the maximum Limit of Insurance applicable to Hardwoods' claim regardless of the number of policy periods.

22. Lumbermens has breached its insurance contracts with Hardwoods by failing to pay the full amount owed under each of its the Crime Policies.

### COUNT I - DECLARATION OF RIGHTS

23. Hardwoods adopts and incorporates each of the averments contained in Paragraphs 1 through 27 as though fully restated here.

24. Under 28 U.S.C. § 2201, Hardwoods is entitled to a declaration that Lumbermens has breached its duties under its several insurance contracts and is therefore indebted to

Hardwoods; Lumbermens' breaches have caused Hardwoods to incur unnecessary trouble and expense, including attorneys' fees, and the expenses of bringing this litigation.

25. In this diversity case, Arkansas law governs the analysis of the insurance policy's terms. In Arkansas, the objectively reasonable expectations of the parties govern the interpretation of insurance contracts. *Southern Farm Bureau Cas. Ins. Co. v. Craven*, 89 S.W.3d 369 (Ark. App. 2002).

26. Courts in Arkansas are to determine the plain and ordinary meaning of an insurance contract as a matter of law. *Aetna Ins. Co. v. Smith*, 263 Ark. 849 (1978).

27. Exclusions in insurance contracts are narrowly construed, with the burden on the insurer. *Norris v. State Farm Fire & Casualty Co*., 341 Ark. 360 (2000).

28. Ambiguities in Arkansas insurance policies must be construed against the insurer. *U.S. Fid. & Guar. Co*., 353 Ark. 834 (2003).

29. Here, it was objectively reasonable for Hardwoods to expect each policy to be separate and to recover the $50,000.00 liability limit for each occurrence under each of the seven policies. Each Policy period lasted one year and had a $50,000.00 limit for employee theft per occurrence. Yet, Lumbermens has tendered a single occurrence, $50,000.00 payment to Hardwoods for a single Policy Period, rendering Hardwoods' payment of premiums on seven separate policies meaningless. See, *Glaser v. Hartford Cas. Ins. Co*., 364 F.Supp.2d 529 (2005).

30. Lumbermens tender ignores the fact that Hardwoods had many separate policies in effect during the theft by Fant. Lumbermens tender also ignores the fact that for each year of coverage from 2014 to 2023, under a corresponding Crime Policy with Lumbermens, Fant committed dozens of thefts. For example, as part of his theft schemes, Fant used

Hardwoods' payroll portal to make multiple unauthorized commission payments of more than $3.9 million to Fant's Bank of Fayetteville account. On multiple occasions over the same period, Fant also used Hardwoods' bank accounts to transfer money directly into his Bank of Fayetteville account. Fant also made multiple unauthorized payments from Hardwoods' bank accounts to fund Fant's 401K contributions and to fund the repayment of loans that Fant had taken from his 401K account.

31. Because Lumbermens issued multiple separate policies for employee theft coverage, it should be liable to Hardwoods up to the limit of liability for each occurrence under the seven applicable policy periods.

WHEREFORE, Plaintiff prays for relief from the Court that it declare the respective rights of the parties and hold that Lumbermens owes Hardwoods insurance coverage payments for each occurrence under each of the Crime Policies, reasonable attorneys' fees, and expenses, pre- and post-judgment interest, and such other relief as the Court deems appropriate.

Dated March 6, 2024.                    Respectfully submitted,

*[signature: Conner Eldridge]*

Conner Eldridge, Ark. Bar No. 2003155
Emily A. Neal, Ark. Bar No. 2003087
Kelly Comer, Ark. Bar No. 2014209
ELDRIDGE BROOKS, PLLC
5100 West JB Hunt Drive, Suite 840
Rogers, AR 72758
(479) 553-7678 telephone
(479) 553-7553 facsimile
conner@eldridgebrooks.com
emily@eldridgebrooks.com
kelly@eldridgebrooks.com

*Attorneys for Plaintiffs*