# EXHIBIT B

**CRIME AND FIDELITY**
**CR 00 21 06 22**

# COMMERCIAL CRIME COVERAGE FORM
# (LOSS SUSTAINED FORM)

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is or is not covered.

Throughout this Policy:

**1.** The words "you" and "your" refer to:

   **a.** The first Named Insured shown in the Declarations; and

   **b.** Any "employee benefit plan", "subsidiary" or other entity that is named as an Insured in the Declarations or included as an Insured by endorsement.

   The first Named Insured in Paragraph **a.** above will act for itself and for every other Insured for all purposes of this insurance.

**2.** The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

**A. Insuring Agreements**

Coverage is provided under the following Insuring Agreements for which a Limit Of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place during the Policy Period shown in the Declarations, except as provided in the Loss Sustained During Prior Insurance Conditions **E.1.l.** and **E.1.m.**, which is "discovered" by a "designated person" during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss Condition **E.1.h.**:

**1. Fidelity**

   **a. Employee Theft**

   We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

   For the purposes of this Insuring Agreement, "theft" includes forgery.

   **b. ERISA Plan Official Dishonesty**

   We will pay for loss of or damage to "money", "securities" and "other property" belonging to an "ERISA employee benefit plan" resulting directly from "fraud or dishonesty" committed by:

   **(1)** An "ERISA plan official", whether identified or not; or

   **(2)** You, but only if you are a sole proprietor;

   acting alone or in collusion with other persons.

   **c. Employee Theft Of Clients' Property**

   We will pay for loss of or damage to "money", "securities" and "other property" sustained by your "client" resulting directly from "theft" committed by an identified "employee", acting alone or in collusion with other persons.

   For the purposes of this Insuring Agreement, "theft" includes forgery.

**2. Forgery Or Alteration**

   **a. Forgery Of Negotiable Instruments**

   **(1)** We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

   **(a)** Made or drawn by or drawn upon you; or



EXHIBIT
B

© Insurance Services Office, Inc., 2021

**(b)** Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act will be treated the same as the original it replaced.

**(2)** If you are sued for refusing to pay any instrument covered in Paragraph **(1)** above, on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay for such legal expenses is in addition to the Limit of Insurance applicable to this Insuring Agreement.

**b. Forgery Of Payment Card Instruments**

We will pay for loss resulting directly from "forgery" of written instruments required in conjunction with any credit, debit or charge card issued to:

**(1)** You; or

**(2)** Any of your "employees" or "ERISA plan officials";

for business purposes.

**3. Inside The Premises – Theft Of Money And Securities**

We will pay for:

**a.** Loss of "money" and "securities" inside the "premises" or "financial institution premises":

**(1)** Resulting directly from "theft" committed by a person present inside such "premises" or "financial institution premises"; or

**(2)** Resulting directly from disappearance or destruction.

**b.** Loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" or "securities", if you are the owner of the "premises" or are liable for damage to it.

**c.** Loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of, or unlawful entry into, those containers.

**4. Inside The Premises – Robbery Or Safe Burglary Of Other Property**

We will pay for:

**a.** Loss of or damage to "other property":

**(1)** Inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or

**(2)** Inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".

**b.** Loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "robbery" or "safe burglary" of "other property", if you are the owner of the "premises" or are liable for damage to it.

**c.** Loss of or damage to a locked safe or vault located inside the "premises" resulting directly from an actual or attempted "robbery" or "safe burglary".

**5. Outside The Premises**

We will pay for:

**a.** Loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

**b.** Loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

**6. Computer And Funds Transfer Fraud**

We will pay for:

**a.** Loss resulting directly from a fraudulent:

**(1)** Entry of "electronic data" or "computer program" into; or

**(2)** Change of "electronic data" or "computer program" within;

any "computer system", provided that the fraudulent entry or fraudulent change causes, with regard to Paragraphs **(1)** and **(2)** above:

    **(a)** "Money", "securities" or "other property" to be transferred, paid or delivered to a person, entity or account beyond your control; or

    **(b)** Your account at a "financial institution" to be debited or deleted;

without your knowledge or consent.

**b.** Loss resulting directly from a "financial institution" debiting your "transfer account" in reliance upon a "transfer instruction" purportedly issued by you directing the "financial institution" to transfer, pay or deliver "money" or "securities" from that account, but which "transfer instruction" proves to have been fraudulently issued by an imposter without your knowledge or consent.

**7. Fraudulent Impersonation**

We will pay for:

**a.** Loss resulting directly from you having acted upon a "transfer instruction" that was, in fact, issued by a "client" or "vendor", but in which the bank account information or wire transfer instructions of such "client" or "vendor" had been changed by you acting in good faith reliance upon a "change of account request" purportedly issued by an "authorized person" or the "client" or "vendor", but which "change of account request" proves to have been fraudulently issued by an imposter without the knowledge or consent of the "authorized person", "client" or "vendor" and the fraudulent act resulted in you transferring, paying or delivering "money" or "securities" to a person, entity or account beyond your control; or

**b.** Loss resulting directly from you having acted in good faith reliance upon a "transfer instruction" purportedly issued by an "authorized person", "client" or "vendor" and you transferred, paid or delivered "money" or "securities" to a person, entity or account beyond your control, but which "transfer instruction" proves to have been fraudulently issued by an imposter without the knowledge or consent of the "authorized person", "client" or "vendor".

**8. Money Orders And Counterfeit Money**

We will pay for loss resulting directly from you having accepted in good faith in exchange for merchandise, "money" or services:

**a.** Money orders issued by any post office, express company or "financial institution" that are not paid upon presentation; or

**b.** "Counterfeit money" that is acquired during the regular course of business.

**B. Limit Of Insurance**

The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit Of Insurance shown in the Declarations.

If any loss is covered under more than one Insuring Agreement or coverage, the most we will pay for such loss will not exceed the largest Limit of Insurance available under any one of those Insuring Agreements or coverages.

**C. Deductible**

We will not pay for loss resulting directly from an "occurrence", unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

**D. Exclusions**

**1. Exclusions Applicable To All Insuring Agreements**

This insurance does not cover:

**a. Acts Committed By You, Your Partners Or Members**

Loss resulting from "theft" or any other fraudulent or dishonest act committed by:

    **(1)** You; or

    **(2)** Any of your partners or "members";

whether acting alone or in collusion with other persons, except when covered under Insuring Agreement **A.1.b.**

**b. Acts Committed By Your Employees, ERISA Plan Officials, Managers, Directors, Trustees Or Representatives**

Loss resulting from "theft" or any other fraudulent or dishonest act committed by any of your "employees", "ERISA plan officials", "managers", directors, trustees or authorized representatives:

**(1)** Whether acting alone or in collusion with other persons; or

**(2)** While performing services for you or otherwise;

except when covered under Insuring Agreement **A.1.a., A.1.b.** or **A.1.c.**

**c. Acts Committed By Your Employees Or ERISA Plan Officials Prior To The Policy Period**

Loss caused by any "employee" or "ERISA plan official" if the "employee" or "ERISA plan official" had also committed "theft" or any other fraudulent or dishonest act prior to the effective date of this insurance and you or a "designated person", not in collusion with the "employee" or "ERISA plan official", learned of such "theft" or fraudulent or dishonest act prior to the Policy Period shown in the Declarations.

**d. Confidential Or Personal Information**

**(1)** The disclosure of your or another person's or entity's confidential or personal information; or

**(2)** The use of another person's or entity's confidential or personal information, except that this Paragraph **(2)** does not apply to loss otherwise covered under this insurance that results directly from the use of your or an "employee benefit plan" participant's confidential or personal information.

For the purposes of this exclusion, confidential or personal information includes, but is not limited to, patents, trade secrets, processing methods, "client", customer or "vendor" information, financial information, payment card information, health information, retirement or health savings account information or any other type of nonpublic information.

**e. Data Security Breach**

Fees, costs, fines, penalties and other expenses incurred by you, which are related to the access to or disclosure of another person's or entity's confidential or personal information including, but not limited to, patents, trade secrets, processing methods, "client", customer or "vendor" information, financial information, payment card information, health information, retirement or health savings account information or any other type of nonpublic information.

**f. Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

**g. Indirect Loss**

Loss that is an indirect result of an "occurrence" covered by this insurance including, but not limited to, loss resulting from:

**(1)** Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property";

**(2)** Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance; or

**(3)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

**h. Kidnap, Ransom, Extortion And Other Unlawful Demands**

**(1)** Loss resulting from the surrender of ransom in response to an unlawful demand including, but not limited to, an unlawful demand arising out of:

**(a)** An actual or alleged kidnap or threat to do bodily harm to any person, other than "robbery" covered under this insurance;

**(b)** A threat to do damage to any property or to contaminate, pollute or render substandard your products or goods;

**(c)** A threat to introduce a denial of service attack into any "computer system";

**(d)** A threat to introduce a virus or other malicious instruction into any "computer system", which would encrypt, damage, destroy or corrupt "electronic data" or "computer programs" stored within the "computer system"; or

    **(e)** A threat to access, download, disseminate, divulge or utilize:

        **(i)** Your information or the information of any other natural person or entity; or

        **(ii)** Weaknesses in the source code within any "computer system";

    except when covered under Insuring Agreement **A.1.a.** or **A.1.b.**

**(2)** Loss resulting from payment of any kind in response to a denial of service attack, ransomware, virus or other malicious instruction introduced into any "computer system" that denies or restricts access, encrypts, downloads or otherwise damages, destroys or corrupts any "computer system", "electronic data" or "computer program", except when covered under Insuring Agreement **A.1.a.** or **A.1.b.**

**(3)** Fees, costs and expenses incurred by you arising out of any act or event in Paragraph **(1)** or **(2)** above.

**i. Legal Fees, Costs And Expenses**

Fees, costs and expenses incurred by you, which are related to any legal action, except when covered under Insuring Agreement **A.2.**

**j. Nuclear, Biological Or Chemical Hazard**

Loss or damage resulting from the dispersal or application of pathogenic or poisonous biological or chemical materials, nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident, however caused.

**k. Pollution**

Loss or damage caused by or resulting from pollution. Pollution means the discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**l. Virtual Currency**

Loss involving virtual currency of any kind, by whatever name known, whether actual or fictitious including, but not limited to, digital currency, cryptocurrency or any other type of electronic currency.

**m. War And Military Action**

Loss or damage resulting from:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2. Additional Exclusions Applicable To Specific Insuring Agreements**

**a.** Insuring Agreement **A.1.a.** does not cover:

**(1) ERISA Employee Benefit Plans**

Loss of property belonging to any "ERISA employee benefit plan".

**(2) Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(a)** An inventory computation; or

**(b)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**(3) Trading**

Loss resulting from trading, whether in your name or in a genuine or fictitious account.

**(4) Warehouse Receipts**

Loss resulting from the fraudulent or dishonest signing, issuing, cancelling or failing to cancel a warehouse receipt or any papers connected with it.

**b.** Insuring Agreement **A.1.b.** does not cover:

**Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**c.** Insuring Agreement **A.1.c.** does not cover:

**(1) Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(a)** An inventory computation; or

**(b)** A profit and loss computation.

However, where your "client" establishes wholly apart from such computations that it has sustained a loss resulting from "theft" caused by an identified "employee", then you may offer your "client's" inventory records and actual physical count of inventory in support of the amount of loss claimed.

**(2) Trading**

Loss resulting from trading, whether in your "client's" name or in a genuine or fictitious account.

**(3) Warehouse Receipts**

Loss resulting from the fraudulent or dishonest signing, issuing, cancelling or failing to cancel a warehouse receipt or any papers connected with it.

**d.** Insuring Agreement **A.2.b.** does not cover:

**Non-compliance With Payment Card Issuer's Requirements**

Loss arising from any credit, debit or charge card if you have not complied fully with the provisions, conditions or other terms under which the card was issued.

**e.** Insuring Agreements **A.3., A.4.** and **A.5.** do not cover:

**(1) Accounting Or Arithmetical Errors Or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

**(2) Exchanges Or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**(3) Fire**

Loss or damage resulting from fire, however caused, except:

**(a)** Loss of or damage to "money" and "securities"; and

**(b)** Loss from damage to a safe or vault.

**(4) Money Operated Devices**

Loss of property contained in any money operated device, unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**(5) Motor Vehicles Or Equipment And Accessories**

Loss of or damage to motor vehicles, trailers or semitrailers or equipment and accessories attached to them.

**(6) Vandalism**

Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property", by vandalism or malicious mischief.

**(7) Voluntary Parting Of Title To Or Possession Of Property**

Loss resulting from your, or anyone else acting on your express or implied authority, being induced by any fraudulent or dishonest act to voluntarily part with title to or possession of any property.

**f.** Insuring Agreement **A.6.** does not cover:

**(1) Authorized Access**

Loss resulting from a fraudulent:

**(a)** Entry of "electronic data" or "computer program" into; or

**(b)** Change of "electronic data" or "computer program" within;

any "computer system" by an "employee" or other person or entity with authorized access to that "computer system".

**(2) Credit Card Transactions**

Loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification or other cards, or the information contained on such cards.

**(3) Exchanges Or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**(4) Fraudulent Instructions**

Loss resulting from an "employee" or other person or entity acting upon any kind of instruction to:

**(a)** Transfer, pay or deliver "money", "securities" or "other property"; or

**(b)** Debit or delete your account;

which instruction proves to be fraudulent, except for a "financial institution" acting upon an instruction to debit your "transfer account" when covered under Insuring Agreement **A.6.b.**

**(5) Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(a)** An inventory computation; or

**(b)** A profit and loss computation.

## E. Conditions

The following conditions apply in addition to the Common Policy Conditions:

**1. Conditions Applicable To All Insuring Agreements**

**a. Additional Premises Or Employees**

If, while this insurance is in force, you establish any additional "premises" or hire additional "employees", other than through:

**(1)** Consolidation or merger with; or

**(2)** Purchase or acquisition of assets or liabilities of;

another entity, such "premises" and "employees" will automatically be covered under this insurance.

Notice to us of an increase in the number of "premises" or "employees" is not required and no additional premium will be charged for the remainder of the Policy Period shown in the Declarations.

**b. Cancellation Or Termination**

The following applies in addition to the Cancellation provision in the Common Policy Conditions:

**(1) Coverage Termination**

**(a)** This insurance terminates in its entirety immediately upon:

**(i)** The effective date of a "change of control" of the first Named Insured; or

**(ii)** The voluntary dissolution or liquidation of the first Named Insured.

**(b)** This insurance terminates as to any Insured, other than the first Named Insured, immediately upon:

**(i)** The effective date of a "change of control" of that Insured; or

      **(ii)** The voluntary dissolution or liquidation of that Insured.

If this insurance terminates for any reason specified in Paragraph **(a)** or **(b)** above, we will send the first Named Insured any premium refund due. The refund will be pro rata.

**(2) Individual Insured Or Coverage Cancellation**

We, or the first Named Insured shown in the Declarations, may cancel this insurance as to any Insured, or on any Insuring Agreement or coverage in accordance with the provisions of the Cancellation Common Policy Condition.

**(3) Termination Of Coverage As To Any Employee Or ERISA Plan Official**

This insurance terminates as to any "employee" or "ERISA plan official":

  **(a)** As soon as:

      **(i)** A "designated person"; or

      **(ii)** An "employee" in your Human Resources Department or its equivalent;

not in collusion with the "employee" or "ERISA plan official", learns of "theft" or any other fraudulent or dishonest act committed by the "employee" or "ERISA plan official", whether before or after becoming employed by you; or

  **(b)** On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**c. Concealment, Misrepresentation Or Fraud**

This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other Insured, at any time, intentionally conceals or misrepresents a material fact concerning:

**(1)** This insurance;

**(2)** The property covered under this insurance;

**(3)** Your interest in the property covered under this insurance; or

**(4)** A claim under this insurance.

**d. Consolidation – Merger – Acquisition**

**(1)** Except as provided in Paragraph **(2)** below, if you consolidate or merge with another entity where you are the surviving entity, or you purchase or acquire the assets or liabilities of another entity:

  **(a)** You must give us written notice as soon as possible and obtain our written consent to extend the coverage provided by this insurance to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

  **(b)** For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this insurance will apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all "occurrences" causing or contributing to loss involving such consolidation, merger or purchase or acquisition of assets or liabilities must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

Any "employee benefit plan" acquired in such consolidation, merger or purchase or acquisition will automatically be included as an Insured under this insurance.

      © Insurance Services Office, Inc., 2021      CR 00 21 06 22

**(2)** For "subsidiaries" you acquire in which you own greater than 50% of the voting stock or voting rights, the coverage provided by this insurance will automatically apply to loss sustained by such acquired "subsidiary" resulting directly from an "occurrence" taking place at any time which is "discovered" by a "designated person" during the Policy Period shown in the Declarations, except as provided in the Loss Sustained During Prior Insurance Conditions **E.1.l.** and **E.1.m.,** or during the period of time provided in the Extended Period To Discover Loss Condition **E.1.h.,** provided that:

    **(a)** The assets of the acquired "subsidiary" do not exceed the Percentage Of Total Assets Applicable To Subsidiary Acquisitions shown in the Declarations, which is based on your total assets as reflected in your most recent fiscal year-end consolidated financial statements immediately preceding the effective date of this insurance; and

    **(b)** The acquired "subsidiary" has not had any paid or reported claims of the type covered under this insurance for the three-year period prior to the date of such acquisition.

You are not required to provide notice of the acquisition to us and you are not required to pay any additional premium for the remainder of the Policy Period shown in the Declarations.

Any "employee benefit plan" of an acquired "subsidiary" will automatically be included as an Insured under this insurance.

**e. Cooperation**

You must cooperate with us in all matters pertaining to this insurance as stated in its terms and conditions.

**f. Duties In The Event Of Loss**

Upon "discovery" of loss or a situation that may result in loss of or damage to "money", "securities" or "other property":

**(1)** Except as provided in Paragraph **(2)** below, you must:

    **(a)** Notify us as soon as possible;

    **(b)** Give us a detailed, sworn proof of loss within 120 days;

    **(c)** Cooperate with us in the investigation and settlement of any claim;

    **(d)** Produce for our examination all pertinent records;

    **(e)** Submit to examination under oath at our request and give us a signed statement of your answers; and

    **(f)** Secure all of your rights of recovery against any person or entity responsible for the loss and do nothing to impair those rights.

**(2)** If a Deductible Amount applies to the loss and a percentage is shown in the Declarations as the Percentage Of Deductible Amount Over Which Losses Must Be Reported, you do not have to notify us if the amount of loss at the time of "discovery" does not exceed such percentage of the applicable Deductible Amount.

However, if you later learn that the amount of such loss exceeds, or may reasonably be expected to exceed, the percentage of the applicable Deductible Amount, then you must:

    **(a)** Notify us no later than 15 days from the earliest of:

      **(i)** The date you learned that such loss exceeded the percentage of the applicable Deductible Amount;

      **(ii)** The effective date of termination or cancellation of this insurance; or

      **(iii)** The termination of the period of time provided in the Extended Period To Discover Loss Condition **E.1.h.(1);**

    **(b)** Give us a detailed, sworn proof of loss within 120 days from the date you gave us notice; and

    **(c)** Comply with the requirements set forth in Paragraphs **(1)(c)** through **(1)(f)** above.

**(3)** If you have reason to believe that any loss (except for loss covered under Insuring Agreement **A.1.a., A.1.b., A.1.c.** or **A.2.**) involves a violation of law, you must notify the local law enforcement authorities.

**g. Employee Benefit Plans**

Any payment we make for loss sustained by any "employee benefit plan" will be made to the plan sustaining the loss and will fully release us on account of such loss.

**h. Extended Period To Discover Loss**

We will pay for loss that you sustain prior to the effective date of cancellation or termination of this insurance in its entirety, as to any Insured or on any Insuring Agreement or coverage, which is "discovered" by a "designated person":

**(1)** Except as provided in Paragraph **(2)** below, no later than one year from the date of that cancellation or termination. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you or that Insured, whether from us or another insurer, which replaces in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(2)** No later than one year from the date of that cancellation or termination with regard to any "ERISA employee benefit plan". However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you or that "ERISA employee benefit plan", whether from us or another insurer, that provides, at a minimum, the same coverage afforded by Insuring Agreement **A.1.b.** in an amount that is no less than the minimum amount of coverage required under ERISA and which also provides that such coverage applies to loss sustained prior to its effective date.

**i. Joint Insured**

**(1)** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance.

**(2)** If a "designated person" of any Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

**(3)** An "employee" of any Insured is considered to be an "employee" of every Insured.

**(4)** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

**(5)** Payment by us to the first Named Insured for loss sustained by any Insured, or payment by us to any "employee benefit plan" for loss sustained by that plan, will fully release us on account of such loss.

**j. Legal Action Against Us**

You may not bring any legal action against us involving loss:

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of loss with us; and

**(3)** Unless brought within two years from the date the loss was "discovered".

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**k. Liberalization**

If we adopt any revision that would broaden the coverage under this insurance without additional premium within 45 days prior to or during the Policy Period shown in the Declarations, the broadened coverage will immediately apply to this insurance.

**l. Loss Sustained During Prior Insurance Issued By Us Or Any Affiliate**

**(1) Loss Sustained Partly During This Insurance And Partly During Prior Insurance**

If loss is "discovered" by a "designated person" during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place:

**(a)** Partly during the Policy Period shown in the Declarations; and

© Insurance Services Office, Inc., 2021

**(b)** Partly during the policy period(s) of any prior cancelled or terminated insurance that we or any affiliate issued to you or any predecessor in interest;

and this insurance became effective at the time of cancellation or termination of the prior insurance, we will first settle the amount of loss that you sustained during this Policy Period. We will then settle the remaining amount of loss that you sustained during the policy period(s) of the prior insurance.

**(2) Loss Sustained Entirely During Prior Insurance**

If loss is "discovered" by a "designated person" during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place entirely during the policy period(s) of any prior cancelled or terminated insurance that we or any affiliate issued to you or any predecessor in interest, we will pay for the loss, provided that:

**(a)** This insurance became effective at the time of cancellation or termination of the prior insurance; and

**(b)** The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

We will first settle the amount of loss that you sustained during the most recent prior insurance. We will then settle any remaining amount of loss that you sustained during the policy period(s) of any other prior insurance.

**(3)** In settling loss under Paragraphs **(1)** and **(2)** above:

**(a)** The most we will pay for the entire loss is the highest single Limit of Insurance applicable during the period of loss, whether such limit was written under this insurance or was written under the prior insurance issued by us.

**(b)** We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under this insurance. If no loss was sustained under this insurance, we will apply the Deductible Amount shown in the Declarations to the amount of loss sustained under the most recent prior insurance.

If the Deductible Amount is larger than the amount of loss sustained under this insurance, or the most recent prior insurance, we will apply the remaining Deductible Amount to the remaining amount of loss sustained during the prior insurance.

We will not apply any other deductible amount that may have been applicable to the loss.

**(4)** The following examples demonstrate how we will settle losses subject to this condition:

**Example Number 1**

The Insured sustained a covered loss of $10,000 resulting directly from an "occurrence" taking place during the terms of Policy **A** and Policy **B.**

#### Policy A

The current policy. Written at a Limit of Insurance of $50,000 and a Deductible Amount of $5,000.

#### Policy B

Issued prior to Policy **A.** Written at a Limit of Insurance of $50,000 and a Deductible Amount of $5,000.

#### Settlement Of Loss

The amount of loss sustained under Policy **A** is $2,500 and under Policy **B,** $7,500.

The highest single Limit of Insurance applicable to this entire loss is $50,000 written under Policy **A.** The Policy **A** Deductible Amount of $5,000 applies. The loss is settled as follows:

**(a)** The amount of loss sustained under Policy **A** ($2,500) is settled first. The amount we will pay is nil ($0.00) because the amount of loss is less than the Deductible Amount (i.e., $2,500 loss - $5,000 deductible = $0.00).

**(b)** The remaining amount of loss sustained under Policy **B** ($7,500) is settled next. The amount recoverable is $5,000 after the remaining Deductible Amount from Policy **A** of $2,500 is applied to the loss (i.e., $7,500 loss - $2,500 deductible = $5,000).

The most we will pay for this loss is $5,000.

**Example Number 2**

The Insured sustained a covered loss of $250,000 resulting directly from an "occurrence" taking place during the terms of Policy **A** and Policy **B**.

**Policy A**

The current policy. Written at a Limit of Insurance of $125,000 and a Deductible Amount of $10,000.

**Policy B**

Issued prior to Policy **A**. Written at a Limit of Insurance of $150,000 and a Deductible Amount of $25,000.

**Settlement Of Loss**

The amount of loss sustained under Policy **A** is $175,000 and under Policy **B**, $75,000.

The highest single Limit of Insurance applicable to this entire loss is $150,000 written under Policy **B**. The Policy **A** Deductible Amount of $10,000 applies. The loss is settled as follows:

**(a)** The amount of loss sustained under Policy **A** ($175,000) is settled first. The amount we will pay is the Policy **A** limit of $125,000 because $175,000 loss - $10,000 deductible = $165,000, which is greater than the $125,000 policy limit.

**(b)** The remaining amount of loss sustained under Policy **B** ($75,000) is settled next. The amount we will pay is $25,000 (i.e., $150,000 Policy **B** limit - $125,000 paid under Policy **A** = $25,000).

The most we will pay for this loss is $150,000.

**Example Number 3**

The Insured sustained a covered loss of $2,000,000 resulting directly from an "occurrence" taking place during the terms of Policies **A, B, C** and **D**.

**Policy A**

The current policy. Written at a Limit of Insurance of $1,000,000 and a Deductible Amount of $100,000.

**Policy B**

Issued prior to Policy **A**. Written at a Limit of Insurance of $750,000 and a Deductible Amount of $75,000.

**Policy C**

Issued prior to Policy **B**. Written at a Limit of Insurance of $500,000 and a Deductible Amount of $50,000.

**Policy D**

Issued prior to Policy **C**. Written at a Limit of Insurance of $500,000 and a Deductible Amount of $50,000.

**Settlement Of Loss**

The amount of loss sustained under Policy **A** is $350,000; under Policy **B**, $250,000; under Policy **C**, $600,000; and under Policy **D**, $800,000.

The highest single Limit of Insurance applicable to this entire loss is $1,000,000 written under Policy **A**. The Policy **A** Deductible Amount of $100,000 applies. The loss is settled as follows:

**(a)** The amount of loss sustained under Policy **A** ($350,000) is settled first. The amount we will pay is $250,000 (i.e., $350,000 loss - $100,000 deductible = $250,000).

**(b)** The amount of loss sustained under Policy **B** ($250,000) is settled next. The amount we will pay is $250,000 (no deductible is applied).

**(c)** The amount of loss sustained under Policy **C** ($600,000) is settled next. The amount we will pay is $500,000, the policy limit (no deductible is applied).

**(d)** We will not make any further payment under Policy **D**, as the maximum amount payable under the highest single Limit of Insurance applying to the loss of $1,000,000 under Policy **A** has been satisfied.

The most we will pay for this loss is $1,000,000.

© Insurance Services Office, Inc., 2021

**m. Loss Sustained During Prior Insurance Not Issued By Us Or Any Affiliate**

(1) If loss is "discovered" by a "designated person" during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place during the policy period of any prior cancelled or terminated insurance that was issued to you or a predecessor in interest by another company, and the period of time to discover loss under that insurance had expired, we will pay for the loss under this insurance, provided that:

    (a) This insurance became effective at the time of cancellation or termination of the prior insurance; and

    (b) The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

(2) In settling loss subject to this condition:

    (a) The most we will pay for the entire loss is the lesser of the Limits of Insurance applicable during the period of loss, whether such limit was written under this insurance or was written under the prior cancelled or terminated insurance.

    (b) We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under the prior cancelled or terminated insurance.

(3) The insurance provided under this condition is subject to the following:

    (a) If loss covered under this condition is also partially covered under the Loss Sustained During Prior Insurance Issued By Us Or Any Affiliate Condition **E.1.l.**, the amount recoverable under this condition is part of, not in addition to, the amount recoverable under Condition **E.1.l.**

    (b) For loss covered under this condition that is not subject to Paragraph **(a)** above, the amount recoverable under this condition is part of, not in addition to, the Limit of Insurance applicable to the loss covered under this insurance and is limited to the lesser of the amount recoverable under:

        (i) This insurance as of its effective date; or

        (ii) The prior cancelled or terminated insurance had it remained in effect.

**n. Other Insurance**

If other valid and collectible insurance is available to you for loss covered under this insurance, our obligations are limited as follows:

**(1) Primary Insurance**

    When this insurance is written as primary insurance and:

    (a) You have other insurance subject to the same terms and conditions as this insurance, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit Of Insurance shown in the Declarations bears to the total limit of all insurance covering the same loss.

    (b) You have other insurance covering the same loss other than that described in Paragraph **(a)** above, we will only pay for the amount of loss that exceeds:

        (i) The limit of insurance and deductible amount of that other insurance, whether you can collect on it or not; or

        (ii) The Deductible Amount shown in the Declarations;

        whichever is greater. Our payment for loss is subject to the terms and conditions of this insurance.

**(2) Excess Insurance**

    (a) When this insurance is written excess over other insurance, we will only pay for the amount of loss that exceeds the limit of insurance and deductible amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this insurance.

    (b) However, if loss covered under this insurance is subject to a deductible, we will reduce the Deductible Amount shown in the Declarations by the sum total of all such other insurance plus any deductible amount applicable to that other insurance.

**o. Ownership Of Property; Interests Covered**

The property covered under this insurance is limited to property:

**(1)** That you own or lease;

**(2)** That is held by you in any capacity; or

**(3)** For which you are legally liable, provided that you were liable for the property prior to the time the loss was sustained.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or entity. Any claim for loss that is covered under this insurance must be presented by you.

**p. Records**

You must keep records of all property covered under this insurance so we can verify the amount of any loss.

**q. Recoveries**

**(1)** Any recoveries, whether effected before or after any payment under this insurance, whether made by us or by you, will be applied net of the expense of such recovery:

**(a)** First, to you in satisfaction of your covered loss in excess of the amount paid under this insurance;

**(b)** Second, to us in satisfaction of amounts paid in settlement of your claim;

**(c)** Third, to you in satisfaction of any Deductible Amount; and

**(d)** Fourth, to you in satisfaction of any loss not covered under this insurance.

**(2)** Recoveries do not include any recovery:

**(a)** From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

**(b)** Of original "securities" after duplicates of them have been issued.

**r. Territory**

This insurance covers loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world.

**s. Transfer Of Your Rights Of Recovery Against Others To Us**

You must transfer to us all your rights of recovery against any person or entity for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**t. Valuation – Settlement**

The value of any loss for purposes of coverage under this insurance will be determined as follows:

**(1) Money**

Loss of "money" but only up to and including its face value. We will, at your option, pay for loss of "money" issued by any country other than the United States of America:

**(a)** At face value in the "money" issued by that country; or

**(b)** In the United States of America dollar equivalent, determined by the rate of exchange published in The Wall Street Journal on the day the loss was "discovered".

**(2) Securities**

Loss of "securities" but only up to and including their value at the close of business on the day the loss was "discovered". We may, at our option:

**(a)** Pay the market value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

**(b)** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

**(i)** Market value of the "securities" at the close of business on the day the loss was "discovered"; or

  **(ii)** Limit of Insurance applicable to the "securities".

**(3) Property Other Than Money And Securities**

 **(a)** Loss of or damage to property other than "money" and "securities" for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

  **(i)** The Limit of Insurance applicable to the lost or damaged property;

  **(ii)** The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose; or

  **(iii)** The amount you actually spend that is necessary to repair or replace the lost or damaged property.

 **(b)** We will not pay on a replacement cost basis for any loss or damage to property covered under Paragraph **(a)** above:

  **(i)** Until the lost or damaged property is actually repaired or replaced; and

  **(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage occurred.

 If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

 **(c)** We will, at your option, pay for loss or damage to such property:

  **(i)** In the "money" of the country in which the loss or damage was sustained; or

  **(ii)** In the United States of America dollar equivalent of the "money" of the country in which the loss or damage was sustained, determined by the rate of exchange published in The Wall Street Journal on the day the loss was "discovered".

 **(d)** Any property that we pay for or replace becomes our property.

**2. Additional Conditions Applicable To Specific Insuring Agreements**

**a. Under Insuring Agreement A.1.b.**

**(1) Limit Of Insurance**

 You are responsible for selecting a Limit of Insurance for "ERISA employee benefit plans" covered under Insuring Agreement **A.1.b.** that is equal to, or greater than, the minimum amounts of coverage required under ERISA as set forth in Paragraphs **(a)** and **(b)** below.

 **(a)** For "ERISA employee benefit plans" holding no employer securities:

  **(i)** 10% of the amount of funds handled as of the effective date of this insurance; or

  **(ii)** $500,000;

 whichever is less, but in no event less than $1,000.

 **(b)** For "ERISA employee benefit plans" holding employer securities:

  **(i)** 10% of the amount of funds handled as of the effective date of this insurance; or

  **(ii)** $1,000,000;

 whichever is less, but in no event less than $1,000.

 If two or more "ERISA employee benefit plans" are covered under Insuring Agreement **A.1.b.,** the Limit of Insurance must be written in an amount sufficient to cover each plan as if they were separately insured.

 If at the time of "discovery" of loss sustained by an "ERISA employee benefit plan", the Limit of Insurance for Insuring Agreement **A.1.b.** no longer complies with the minimum amount of coverage required for such plan, we will automatically increase the Limit of Insurance for such plan so as to equal such required minimum amount of coverage. You are not required to pay any additional premium for the increase in the Limit of Insurance.

 If the minimum amounts of coverage required under ERISA are amended after the effective date of this insurance, the amended minimum amounts of coverage will automatically apply to the "ERISA employee benefit plans" covered under Insuring Agreement **A.1.b.** You are not required to pay any additional premium for the remainder of the Policy Period shown in the Declarations.

**(2) Payment For Loss Sustained By Multiple Plans**

Any payment we make for loss:

**(a)** Sustained by two or more "ERISA employee benefit plans"; or

**(b)** Of commingled "money", "securities" or "other property" of two or more "ERISA employee benefit plans";

will be made to each such plan sustaining loss in the proportion that the amount of coverage required under ERISA for each such plan bears to the total amount of coverage on all plans sustaining loss.

**(3) Deductible Amount**

Section **C.** Deductible does not apply to loss sustained by an "ERISA employee benefit plan" covered under Insuring Agreement **A.1.b.**

**b. Under Insuring Agreement A.1.c.**

The **Ownership Of Property; Interests Covered** Condition **E.1.o.** is replaced by the following:

**Ownership Of Property; Interests Covered**

The property covered under this Insuring Agreement is limited to property:

**(1)** That your "client" owns or leases;

**(2)** That your "client" holds for others in any capacity; or

**(3)** For which your "client" is legally liable, provided that your "client" was liable for the property prior to the time the loss was sustained.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or entity, including your "client". Any claim for loss that is covered under this Insuring Agreement must be presented by you.

**c. Under Insuring Agreement A.2.**

**(1) Deductible Amount**

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement **A.2.**

**(2) Electronic And Mechanical Signatures**

We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

**(3) Proof Of Loss**

You must include with your proof of loss any instrument involved in that loss or, if that is not possible, an affidavit setting forth the amount and cause of loss.

**d. Condition Applicable To Insuring Agreement A.5.**

**Armored Motor Vehicle Companies**

We will only pay for the amount of loss you cannot recover:

**(1)** Under your contract with the armored motor vehicle company; and

**(2)** From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

**e. Under Insuring Agreement A.7.**

**(1) Change Of Account Requests**

You must make a reasonable effort to verify, but not through email, the authenticity of any "change of account request" with:

**(a)** The "client" or "vendor" purporting to have issued the "change of account request"; or

**(b)** An "authorized person", but not the "authorized person" purporting to have issued the "change of account request";

and contemporaneously document the result of your effort before transferring any property.

© Insurance Services Office, Inc., 2021

CR 00 21 06 22

**(2) Transfer Instructions**

You must make a reasonable effort to verify, but not through email, the authenticity of any "transfer instruction" with:

**(a)** The "client" or "vendor" purporting to have issued the "transfer instruction"; or

**(b)** An "authorized person", but not the "authorized person" purporting to have issued the "transfer instruction";

and contemporaneously document the result of your effort before transferring any property.

**F. Definitions**

**1.** "Authorized person" means:

**a.** Any "employee", partner, "member", "manager", director or trustee;

**b.** Any "ERISA plan official"; or

**c.** You (but only if you are a sole proprietor);

who, with regard to Paragraphs **a., b.** and **c.** above, has the authority to:

**(1)** Act upon "change of account requests" or direct others to act upon such requests; or

**(2)** Issue "transfer instructions" or direct others to issue such instructions.

**2.** "Change of account request" means an instruction received by you, which is transmitted:

**a.** By email, text message, instant message, telefacsimile, telephone or other electronic means; or

**b.** In writing;

directing you to change a "client's" or "vendor's" bank account information or wire transfer instructions.

**3.** "Change of control" means:

**a.** The acquisition of any Insured of more than 50% of its assets by an entity other than another Insured, or the merger or consolidation of any Insured into or with an entity other than another Insured, such that the acquired Insured is not the surviving entity; or

**b.** The obtaining by any person, entity or affiliated group of persons or entities of the right to:

**(1)** Elect, appoint or designate more than 50% of the board of directors, board of trustees or functional equivalent thereof, of any Insured; or

**(2)** Exercise a majority control of the board of directors, board of trustees or a functional equivalent thereof, of any Insured.

**4.** "Client" means any natural person or entity to whom you provide goods or services in exchange for a fee or pursuant to a written agreement.

**5.** "Computer program" means a set of related electronic instructions, which direct the operation and function of a computer or devices connected to it, which enables the computer or devices to receive, process, store or send "electronic data".

**6.** "Computer system" means:

**a.** Any computer, including transportable or handheld devices, electronic storage devices and related peripheral components;

**b.** Any systems and applications software; and

**c.** Any related telecommunications networks, including the Internet, connected to or used in conjunction with such computer or devices:

which, with regard to Paragraphs **a., b.** and **c.** above:

**(1)** Collects, transmits, processes, stores or retrieves "electronic data"; and

**(2)** Is:

**(a)** Owned, leased or operated by you;

**(b)** Owned and operated by an "employee" who has agreed in writing to your personal device use policy; or

**(c)** Operated by an authorized third party while performing services for you, but only with respect to your "electronic data".

**7.** "Counterfeit money" means an imitation of "money", which is intended to deceive and to be taken as genuine.

**8.** "Custodian" means you, or any of your partners, "members" or "employees" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

**9.** "Designated person" means:

**a.** Any insurance risk manager;

**b.** Any partner, "member", "manager", director or trustee;

**c.** Any elected, appointed or otherwise titled officer;

**d.** The highest-ranking "employee" at the "premises" where such "employee" performs the majority of his or her duties; or

**e.** Any administrator, fiduciary, director, trustee, officer or manager of an "employee benefit plan";

of any Insured.

**10.** "Discovery", "discover" or "discovered" means the time when a "designated person" first becomes aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

"Discovery", "discover" or "discovered" also means the time when a "designated person" first receives notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this insurance.

**11.** "Electronic data" means information, facts, images or sounds stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software) on data storage devices, including hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**12.** "Employee":

**a.** Means:

**(1)** Any natural person:

**(a)** While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any other fraudulent or dishonest act committed by the "employee";

**(b)** Whom you compensate directly by salary, wages or commissions; and

**(c)** Whom you have the right to direct and control while performing services for you;

**(2)** Any natural person who is furnished temporarily to you:

**(a)** To substitute for a permanent "employee" defined in Paragraph **(1)** above, who is on leave; or

**(b)** To meet seasonal or short-term workload conditions;

while that person is subject to your direction and control and performing services for you;

**(3)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm to perform duties related to the conduct of your business, but does not mean a temporary "employee" defined in Paragraph **(2)** above;

**(4)** Any natural person who is:

**(a)** An administrator, director, trustee, manager or "employee", except an administrator or manager who is an independent contractor, of a "Non-ERISA employee benefit plan"; or

**(b)** A director, trustee or "employee" of an Insured sponsoring a "Non-ERISA employee benefit plan", while that person is engaged in handling "money", "securities" or "other property" of the plan;

**(5)** Any natural person who is a former "employee", partner, "member", "manager", director or trustee retained by you as a consultant while performing services for you;

**(6)** Any natural person who is a guest student or intern pursuing studies or duties;

**(7)** Any natural person employed by an entity merged or consolidated with you prior to the effective date of this insurance; and

© Insurance Services Office, Inc., 2021

      **(8)** Any natural person who is your "manager", director or trustee while:

        **(a)** Performing acts within the scope of the usual duties of an "employee"; or

        **(b)** Acting as a member of any committee duly elected or appointed by resolution of your board of directors, board of trustees or functional equivalent thereof, to perform specific, as distinguished from general, directorial acts on your behalf.

  **b.** Does not mean:

     Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in Paragraph **a.** above.

**13.** "Employee benefit plan" means any "ERISA employee benefit plan" or "Non-ERISA employee benefit plan":

  **a.** Shown in the Declarations as the first Named Insured; or

  **b.** Included as an Insured and is sponsored:

    **(1)** Solely by another Insured; or

    **(2)** Jointly by another Insured and an employee organization, including a labor organization, solely for the benefit of that Insured's "employees".

**14.** "ERISA employee benefit plan" means any welfare or pension benefit plan that is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

**15.** "ERISA plan official":

  **a.** Means any natural person who is:

    **(1)** An administrator, fiduciary, director, trustee, manager or "employee" of an "ERISA employee benefit plan"; or

    **(2)** A director, trustee or "employee" of an Insured sponsoring an "ERISA employee benefit plan", while that person is engaged in handling "money", "securities" or "other property" of such plan.

  **b.** Does not mean:

     Any agent, broker, financial institution, registered representative, investment advisor, independent contractor or representative of the same general character.

**16.** "Financial institution" means:

  **a.** With regard to Insuring Agreement **A.3.:**

    **(1)** A bank, savings bank, savings and loan association, trust company, credit union or similar depository institution; or

    **(2)** An insurance company.

  **b.** With regard to Insuring Agreement **A.6.:**

    **(1)** A bank, savings bank, savings and loan association, trust company, credit union or similar depository institution;

    **(2)** An insurance company; or

    **(3)** A stock brokerage firm or investment company.

  **c.** For Insuring Agreements other than Insuring Agreements **A.3.** and **A.6.,** any financial institution.

**17.** "Financial institution premises" means the interior of that portion of any building occupied by a "financial institution" listed in Paragraph **16.a.**

**18.** "Forgery" means the signing of the name of another person or entity with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

**19.** "Fraud or dishonesty" means larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, wrongful conversion, willful misapplication or other fraudulent or dishonest act, including any act or arrangement prohibited by title 18, section 1954 of the U.S. Code.

**20.** "Manager" means a natural person serving in a directorial capacity for a limited liability company.

**21.** "Member" means an owner of a limited liability company represented by its membership interest who, if a natural person, may also serve as a "manager".

**22.** "Messenger" means you, or your relative, or any of your partners, "members" or "employees" while having care and custody of property outside the "premises".

**23.** "Money" means:

   **a.** Currency, coins and bank notes in current use and having a face value;

   **b.** Traveler's checks and money orders held for sale to the public; and

   **c.** In addition, includes:

   **(1)** Under Insuring Agreements **A.1.a., A.1.b., A.1.c.** and **A.2.,** deposits in your account at any "financial institution"; and

   **(2)** Under Insuring Agreement **A.6.,** deposits in your account at any "financial institution" listed in Paragraph **F.16.b.**

**24.** "Non-ERISA employee benefit plan" means any welfare or pension benefit plan other than an "ERISA employee benefit plan".

**25.** "Occurrence" means:

   **a.** Under Insuring Agreements **A.1.a.** and **A.1.c.:**

   **(1)** An individual act;

   **(2)** The combined total of all separate acts, whether or not related; or

   **(3)** A series of acts, whether or not related;

   committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, except as provided under the Loss Sustained During Prior Insurance Conditions **E.1.l.** and **E.1.m.**

   **b.** Under Insuring Agreement **A.1.b.:**

   **(1)** An individual act;

   **(2)** The combined total of all separate acts, whether or not related; or

   **(3)** A series of acts, whether or not related;

   committed by an "ERISA plan official" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, except as provided under the Loss Sustained During Prior Insurance Conditions **E.1.l.** and **E.1.m.**

   **c.** Under Insuring Agreement **A.2.:**

   **(1)** An individual act;

   **(2)** The combined total of all separate acts, whether or not related; or

   **(3)** A series of acts, whether or not related;

   committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations, except as provided under the Loss Sustained During Prior Insurance Conditions **E.1.l.** and **E.1.m.**

   **d.** Under all other Insuring Agreements:

   **(1)** An individual act or event;

   **(2)** The combined total of all separate acts or events, whether or not related; or

   **(3)** A series of acts or events, whether or not related;

   committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, except as provided under the Loss Sustained During Prior Insurance Conditions **E.1.l.** and **E.1.m.**

**26.** "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include "computer programs", "electronic data" or any property specifically excluded under this insurance.

**27.** "Premises" means the interior of that portion of any building you occupy in conducting your business.

**28.** "Robbery" means the unlawful taking of property from the care and custody of a person by one who has:

   **a.** Caused or threatened to cause that person bodily harm; or

**b.** Committed an obviously unlawful act witnessed by that person.

29. "Safe burglary" means the unlawful taking of:

   **a.** Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

   **b.** A safe or vault from inside the "premises".

30. "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

   **a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

   **b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

   but does not include "money".

31. "Subsidiary":

   **a.** Means any entity covered under this insurance:

   **(1)** In which on or before the effective date of this insurance you own, directly or indirectly, greater than 50% of the outstanding securities or voting rights representing the present right to elect, appoint, or exercise a majority control over such entity's board of directors, board of trustees or functional equivalent thereof; or

   **(2)** That you form or acquire during the Policy Period shown in the Declarations in which you own, directly or indirectly, greater than 50% of the outstanding securities or voting rights representing the present right to elect, appoint or exercise a majority control over such entity's board of directors, board of trustees or functional equivalent thereof, subject to Paragraph **E.1.d.(2)** of the Consolidation – Merger – Acquisition Condition.

   **b.** Does not mean:

   Any joint venture or partnership in which you have an ownership interest, unless the joint venture or partnership is added as an Insured by endorsement.

32. "Theft" means:

   **a.** The unlawful taking of property to the deprivation of the Insured; or

   **b.** Solely with regard to Insuring Agreement **A.1.c.,** the unlawful taking of property to the deprivation of a "client".

33. "Transfer account" means an account maintained by you at a "financial institution" from which you can initiate the transfer, payment or delivery of "money" or "securities".

34. "Transfer instruction" means:

   **a.** With regard to Insuring Agreement **A.6.b.,** an instruction received by a "financial institution", which is transmitted:

   **(1)** By email, text message, instant message, telefacsimile, telephone or other electronic means; or

   **(2)** In writing, other than an instrument covered under Insuring Agreement **A.2.;**

   directing the "financial institution" to transfer, pay or deliver "money" or "securities" from your "transfer account" to a person, entity or account beyond your control.

   **b.** With regard to Insuring Agreement **A.7.,** an instruction received by you, which is transmitted:

   **(1)** By email, text message, instant message, telefacsimile, telephone or other electronic means; or

   **(2)** In writing;

   directing you to transfer, pay or deliver "money" or "securities" to a person, entity or account beyond your control.

35. "Vendor" means a natural person or entity that provides or has provided goods or services to you pursuant to a written agreement but does not include any financial institution or armored motor vehicle company.

36. "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.