IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| WHITE RIVER HARDWOODS-WOODWORKS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) CIVIL ACTION NO: 5:24-cv-05054-PKH |
| PENNSYLVANIA LUMBERMENS MUTUAL INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) ) |

**DEFENDANT PENNSYLVANIA LUMBERMENS MUTUAL INSURANCE COMPANY'S
BRIEF IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS**

Defendant Pennsylvania Lumbermens Mutual Insurance Company ("PLM" or "Defendant"), pursuant to Local Rule 7.2 and Federal Rule of Civil Procedure 12(b)(6), restpectfully submits this Brief in Support of its Motion to Dismiss Plaintiff White River Hardwoods Woodworks, Inc.'s ("Plaintiff" or "White River") Complaint [Doc. 2].

## INTRODUCTION

This first-party insurance coverage dispute concerns the specific provisions of the Crime and Fidelity Coverage Part of insurance policies issued to Plaintiff by PLM. The policies provide employee theft coverage with a $50,000 limit of liability per "occurrence" on a discovery basis, meaning coverage is limited to losses that: (1) result directly from an "occurrence" taking place during the policy period, and (2) are "discovered" during the policy period or an applicable extended discovery period. Additionally, where a loss is sustained over the course of multiple policy periods, the policies provide specific conditions and examples as to how such losses will be adjusted.

Plaintiff affirmatively alleges that in January 2023, it discovered the loss for which it seeks coverage. Consequently, the loss was "discovered" during the 2022-2023 Policy's effective policy period, and any extended discovery period under the Prior Policies had lapsed. Furthermore, the employee theft resulting in Plaintiff's loss constitutes a single "occurrence" as defined by the operative 2022-2023 Policy. Thus, PLM has paid Plaintiff the maximum limit of liability applicable to the claim and has fully satisfied its contractual obligations. Accordingly, Plaintiff does not and cannot allege facts to state a viable cause of action upon which relief can be granted. Therefore, Plaintiff's request for a declaration that additional amounts are owed under the Policies must be dismissed with prejudice.

## STATEMENT OF FACTS

From 1999 to January 11, 2024, Plaintiff and "related" non-party entities employed Jimmy D. Fant, Jr. ("Fant") as an accountant. [Doc. 2 ¶ 5]. Fant served as Plaintiff's chief financial officer beginning in 2015, during which time he embezzled over $5 million from Plaintiff and its "related" non-party entities. [Doc. 2 ¶ 6]. "In January 2023, [Plaintiff] discovered Fant's theft schemes and notified law enforcement. Through the investigation, [Plaintiff] learned that for many years going back to at least 2014 until his 2023 retirement, Fant carried out the unlawful taking of [Plaintiff's] property." [Doc. 2 ¶ 8; *See* Ex. 7].

On March 16, 2023, Plaintiff notified PLM of its claim and demanded coverage under the following insurance policies:

- Policy number 03-W020-01-14 effective from July 1, 2013 to July 1, 2015 ("2013-2015 Policy")

- Policy number 03-W020-01-16 effective from July 1, 2015 to July 1, 2017 ("2015-2017 Policy");

- Policy number 03-W020-01-18 effective from July 1, 2017 to July 1, 2019 ("2017-2019 Policy");

- Policy number 03-W020-01-19 effective from July 1, 2019 to July 1, 2020 ("2019-2020 Policy");

- Policy number 03-W020-01-20 effective from July 1, 2020 to July 1, 2021 ("2020-2021 Policy");

- Policy number 03-W020-01-21 effective from July 1, 2021 to July 1, 2022 ("2021-2022 Policy"); and

- Policy number 03-W020-01-22 effective from July 1, 2022 to July 1, 2023 ("2022-2023 Policy") (collectively, the "Policies").

[Doc. 2 ¶¶ 11, 19; Exhibits 1-7].[1]

Each of the Policies "covers a different policy period and bears a different policy number[,]" and the 2022-2023 Policy was in effect at the time Plaintiff discovered the loss. [Doc 2 ¶¶ 11, 14]. The 2022-2023 Policy's Crime and Fidelity Coverage Part Declarations (Commercial Entities) ("Declarations") provide that Fidelity - Employee Theft coverage is provided with a

---

[1] "Though matters outside the pleadings may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading. In general, materials embraced by the complaint include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Cont'l Ins. Co. v. Cincinnati Ins. Co.*, No. 5:23-CV-5037-PKH, 2023 WL 7199268, at *2 (quoting *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (internal quotation marks omitted) (internal citations omitted). Therefore, this Court may consider the Policies, which are attached as exhibits to this Motion. *See also Gorog v. Best Buy, Inc.*, 760 F.3d 787, 791 (concluding that the amended complaint embraces the contract between the parties by quoting portions of the written agreement for purposes of Rule 12(b)(6)).

PD.45720648.1

$50,000 limit of insurance per "occurrence" subject to a $1,000 deductible. [Doc. 2 ¶ 13; Doc. 2-1, p. 14 of 15].[2]

The 2022-2023 Policy's Commercial Crime Coverage Form (Loss Sustained Form) ("Crime Coverage Form") provides, in part, as follows:

**COMMERCIAL CRIME COVERAGE FORM
(LOSS SUSTAINED FORM)**

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is or is not covered.

. . .

**A.     Insuring Agreements**

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain directly from an "occurrence" taking place during the Policy Period shown in the Declarations, except as provided in the Loss Sustained During Prior Insurance Conditions **E.1.l.** and **E.1.m.**, which is "discovered" by a "designated person" during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period to Discover Loss Condition **E.1.h.**:

**1.     Fidelity**

**a.  Employee Theft**

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

[Doc. 2-2, p. 2 of 22].

The 2022-2023 Policy's Crime Coverage Form states that "words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions." [Doc 2-2, p. 2 of 22].

---

[2] The Declarations further provide that "[t]he Crime and Fidelity Coverage Part (Commercial Entities) consists of this Declarations form and the Commercial Crime Coverage Form." [Doc. 2-1, p. 14 of 15].

    **F.**    **Definitions**

. . .

10. "Discovery", "discover" or "discovered" means the time when a "designated person" first becomes aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

    "Discovery", "discover" or "discovered" also means the time when a "designated person" first receives notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this insurance.

. . .

25. "Occurrence" means:

    a. Under Insuring Agreements **A.1.a.** and **A.1.c.**:

        **(1)** An individual act;

        **(2)** The combined total of all separate acts, whether or not related; or

        **(3)** A series of acts, whether or not related;

        committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, except as provided under the Loss Sustained During Prior Insurance Conditions **E.1.l.** and **E.1.m.**

[Doc. 2-2, pp. 19, 21 of 22].

Furthermore, the 2022-2023 Policy's "Extended Period to Discover Loss" Condition provides, in part, as follows:

    **h.**    **Extended Period To Discover Loss**

We will pay for loss that you sustain prior to the effective date of cancellation or termination of this insurance in its entirety, as to any Insured or on any Insuring Agreement or coverage, which is "discovered" by a "designated person":

5

> **(1)** Except as provided in Paragraph (2) below, no later than one year from the date of that cancellation or termination. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you or that Insured, whether from us or another insurer, which replaces in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

[Doc. 2-2, p. 11 of 22].[3]

Moreover, the 2022-2023 Policy's Loss Sustained During Prior Insurance Conditions provide, in part, as follows:

> **l.   Loss Sustained During Prior Insurance Issued By Us Or Any Affiliate**
>
> **(1)   Loss Sustained Partly During This Insurance And Partly During Prior Insurance**
>
> > If loss is "discovered" by a "designated person" during the Policy Period shown in the Declarations resulting directly from an 'occurrence' taking place:
> >
> > **(a)** Partly during the Policy Period shown in the Declarations; and
> >
> > **(b)** Partly during the policy period(s) of any prior cancelled or terminated insurance that we or any affiliate issued to you or any predecessor in interest;
> >
> > and this insurance became effective at the time of cancellation or termination of the prior insurance, we will first settle the amount of loss that you sustained during this Policy Period. We will then settle the remaining amount of loss that you sustained during the policy period(s) of the prior insurance.
>
> . . .
>
> **(3)** In settling loss under Paragraphs **(1)** and **(2)** above:

---

[3] All Policies include an identical "Extended Period to Discover Loss" condition subject to which "th[e] extended period to 'discover' loss terminates immediately upon the effective date of any other insurance obtained by [Plaintiff] . . . , whether from [PLM] or another insurer, which replaces in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date." [Exhibits 1-6].

6

    **(a)**    The most we will pay for the entire loss is the highest single Limit of Insurance applicable during the period of loss, whether such limit was written under this insurance or was written under the prior insurance issued by us.

    **(b)**    We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under this insurance. If no loss was sustained under this insurance, we will apply the Deductible Amount shown in the Declarations to the amount of loss sustained under the most recent prior insurance.
We will not apply any other deductible amount that may have been applicable to the loss.

[Doc. 2-2 pp. 11-13].

## ARGUMENT AND AUTHORITY

**I.    Standard of Review**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly* 550 U.S. at 557) (internal citations omitted). The Court assumes the veracity of well-pleaded factual allegations for purposes of a motion to dismiss on the pleadings; however, legal conclusions are not to be presumed. *Id.* at 678-79.

"Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the

7

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When, under no set of facts would the plaintiff's allegations entitle him to relief, dismissal is appropriate. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Moreover, while a court generally limits its review to the face of the pleadings on a Rule 12(b)(6) motion, it can consider certain documents outside of the pleadings that are necessarily embraced by the pleadings or that are integral to the claims at issue. For instance, "[i]n a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss." *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003). And "[t]his is true even if contract documents not attached to the complaint refute a breach-of-contract claim." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017); *Core & Main, LP v. McCabe*, 62 F.4th 414, 419, fn. 2 (8th Cir. 2023) ("[A] document 'integral to the claim' . . . may be considered in ruling on a Rule 12(b)(6) motion."). Additionally, a court may consider items subject to judicial notice, matters of public record, and items appearing in the record of the case. *See e.g., Dittmer Properties, L.P. v. F.D.I.C.,* 708 F.3d 1011, 1021 (8th Cir. 2013).

**II.     Interpretation of the Policies under Arkansas Law**

Under Arkansas law, normal principles of contract interpretation apply to the construction of insurance policies. *Enter. Tools, Inc. v. Exp.-Imp. Bank of U.S.,* 799 F.2d 437, 439 (8th Cir. 1986) (citation omitted) (Arkansas law). When the meaning of an insurance policy is at issue, "[a] common sense approach should be used, and generally the words employed in the policy are to be construed in their plain, ordinary, and popular sense." *Green v. Farmers Ins. Co., Inc.,* 57 F. Supp. 2d 729, 732 (W.D.Ark.1999). *See Norris v. State Farm Fire and Cas. Co.*, 16 S.W.3d 242, 244 (Ark. 2000). "If the language of the policy is unambiguous, [Arkansas courts] will give effect to

the plain language of the policy without resorting to the rules of construction." *McGrew v. Farm Bureau Mut. Ins. Co. of Arkansas*, 268 S.W.3d 890, 895 (Ark. 2007) (citation omitted).[4]

"Although [Arkansas courts] construe ambiguous provisions in favor of the insured, the issue whether a contract is ambiguous is a question of law for the court to resolve, and an ambiguity will be found only when a provision is susceptible to more than one *reasonable* interpretation." *Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.*, 331 Ark. 211, 221, 962 S.W.2d 735, 740 (1998) (internal citations omitted) (emphasis in original). "On the other hand, where a term is defined in the policy, the court is bound by the policy definition." *Enter. Tools, Inc.*, 799 F.2d at 439. (citation omitted). Moreover, "[c]ontracts of insurance should receive a practical, reasonable, and fair interpretation consonant with the apparent object and intent of the parties in the light of their general object and purpose." *Shelter Mutual Ins. Co. v. Williams*, 9 S.W.3d 545, 549 (Ark. App. 2000).

**III.   The 2022-2023 Policy is the Only Policy Applicable to Plaintiff's Loss.**

Plaintiff's own allegations conclusively establish that its claimed loss is not covered under the Prior Policies because the loss was not "discovered" during the Prior Policies' effective policy periods "or during the period of time provided in the Extended Period to Discover Loss Condition." [Doc. 2 ¶ 8; Ex. 1, p. 6; Ex. 2, p. 7; Ex. 3, p. 6; Ex. 4, p. 1; Ex. 5, p. 11; Ex. 6, p. 6].

Thus, the 2022-2023 Policy is the only policy applicable to Plaintiff's claimed loss, which provides, in part, as follows:

---

[4] This Court, exercising diversity jurisdiction, looks to the choice-of-law rules of the forum state to determine which law applies. *See Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 794 (8th Cir. 2005). Coverage disputes under Arkansas law are resolved under the law of the state where the contract was made with additional consideration of the state with the most significant contacts to the policy. *Southern Farm Bureau Cas. Ins. Co. v. Craven*, 89 S.W.3d 369, 372-73 (Ct. App. Ark. 2002). Accordingly, Arkansas law governs the interpretation of the Polices.

PD.45720648.1

**COMMERCIAL CRIME COVERAGE FORM**
**(LOSS SUSTAINED FORM)**

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is or is not covered.

. . .

**B.   Insuring Agreements**

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain directly from an "occurrence" taking place during the Policy Period shown in the Declarations, except as provided in the Loss Sustained During Prior Insurance Conditions **E.1.l.** and **E.1.m.**, which is "discovered" by a "designated person" during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period to Discover Loss Condition **E.1.h**.:

**1.   Fidelity**

**b.   Employee Theft**

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

[Doc. 2-2, p. 2 of 22].[5]

Pursuant to the Insuring Agreements, the loss must be sustained directly from an "occurrence" taking place during the policy period, except as provided in the Loss Sustained During Prior Insurance Conditions ("Prior Insurance Conditions"), which is "discovered" by a

---

[5] The 2022-2023 Policy contains Commercial Crime Coverage Form CR 00 21 06 22. The 2013-2015 Policy contains Commercial Crime Coverage Form CR 00 21 05 06. The 2015-2017 Policy contains Commercial Crime Coverage Form CR 00 21 08 13. The 2017-2019 Policy, 2019-2020 Policy, 2020-2021 Policy, and 2021-2022 Policy contain Commercial Crime Coverage Form CR 00 21 11 15. [See Exs. 1-6].

"designated person" during the policy period or during the period of time provided in the Extended Period To Discover Loss Condition ("Extended Discovery Condition").[6]

"In other words, '[w]hile [a loss sustained policy] covers losses sustained through acts committed or events occurring during the policy period, like an occurrence policy, it only covers those covered losses which have been discovered during a fixed period,' like a claims made or discovery policy." *Emcor Grp., Inc. v. Great Am. Ins. Co.,* No. CIV.A. ELH-12-0142, 2013 WL 1315029, at *17 (D. Md. Mar. 27, 2013) (citation omitted). Plaintiff affirmatively alleges that it "discovered Fant's theft schemes" in January 23 "and notified law enforcement. [Doc 2 ¶ 8]. Plaintiff further alleges that "[t]hrough the investigation," Plaintiff learned the extent of Fant's "unlawful taking of [its] property." [Doc. 2 ¶ 8]. Thus, the loss for which it seeks coverage was "discovered" during the 2022-2023 Policy's policy period.

### A. The Extended Discovery Condition Does Not Apply To Extend Coverage Under the Prior Policies

Notwithstanding that coverage is generally limited to losses "discovered" during the policy period, the Extended Discovery Condition, as incorporated in the Insuring Agreements, provides limited tail coverage for loss "discovered" no later than one year after the policy period.

> However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you or that Insured, whether from us or another insurer, which replaces in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

[Doc. 2-2, p. 11 of 22].

---

[6] *See Bakery Feeds, Inc. v. Ranger Ins. Co.*, 974 S.W.2d 635, 640 (Mo. Ct. App. 1998) ("Commercial Crime Coverage is an indemnity contract for losses sustained as a result of criminal acts, not a liability policy. . . . [I]t only covers those covered losses which have been discovered during a fixed period.").

11

Accordingly, the 2021-2022 Policy's one-year extended discovery period terminated immediately on July 1, 2022 (the effective date of the 2022-2023 Policy). *Midway Truck Parts, Inc. v. Federated Ins. Co.*, No. 11 CV 9060, 2013 WL 593860, at *2 (N.D. Ill. Feb. 15, 2013) ("[T]he plain meaning of th[e] [Extended Discovery Condition] indicates that the Extended Period ends as soon as the (former) insured purchases substitute employee theft insurance and that substitute insurance becomes effective.").[7] Thus, the Extended Discovery Condition does not apply to extend coverage under any of the Prior Policies.

**B.    Fant's Embezzlement Scheme and Plaintiff's Loss Constitutes a Single "Occurrence"**

While Plaintiff alleges that Fant's scheme of embezzlement constitutes multiple "occurrence[s]," this presumption ignores the 2022-2023 Policy's definition of "occurrence," which is defined as follows:

> **25.**    "Occurrence" means:
>
> **a.**    Under Insuring Agreements **A.1.a.** and **A.1.c.**:
>
> **(1)**    An individual act;
>
> **(2)**    The combined total of all separate acts, whether or not related; or
>
> **(3)**    A series of acts, whether or not related;
>
> committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, except as provided under the Loss Sustained During Prior Insurance Conditions **E.1.l.** and **E.1.m.**

---

[7] *See also Pine Belt Auto., Inc. v. Royal Indem. Co.*, No. CIV. A. 06-5995 JAP, 2009 WL 1025564, at *1, *5 (D.N.J. Apr. 16, 2009), *aff'd*, 400 F. App'x 621 (3d Cir. 2010) (holding "one-year discovery period would end once the insured purchased successive coverage" pursuant to the Extended Discovery Condition and insured "may recover under either the predecessor or the successor policy for loss discovered within a year of the earlier policy's termination.").

[Doc. 2-2, pp. 19, 21 of 22].[8]

While Arkansas courts have not directly addressed the above definition of "occurrence," established Arkansas law governing the interpretation of insurance policies providing that "[w]here a term is defined in the policy; the court is bound by the policy definition." *Atl. Cas. Ins. Co. v. Paradise Club*, 219 F. Supp. 3d 938, 946 (W.D. Ark. 2016) (quoting *Nationwide Mut. Ins. Co. v. Worthey*, 314 Ark. 185, 861 S.W.2d 307, 310 (1993)). Here, Plaintiff's allegations once again establish that Fant (one "employee") engaged in a series of acts (embezzled funds from multiple sources over a number of years) that caused Plaintiff's loss, and by its terms, the definition of "occurrence" makes clear that regardless of whether an employee commits one or many acts, the resulting loss is one "occurrence."

Moreover, the majority of courts have determined that, in the context of Commercial Crime Coverage, this definition of an "occurrence" is unambiguous, and a single employee's series of acts in connection with an embezzlement scheme committed over the course of multiple years and policy periods constitutes a single "occurrence." *See, e.g., Emps. Mut. Cas. Co. v. DGG & CAR, Inc.*, 183 P.3d 513, 516 (D. Ariz. 2008) (holding loss resulting from the embezzlement scheme committed by a single employee was a single "occurrence"); *Bethany Christian Church v. Preferred Risk Mut. Ins. Co.,* 942 F. Supp. 330, 335 (S.D. Tex. 1996) (holding thefts committed by employee were a series of acts, which, as defined in the policy, constituted one "occurrence"); *Christ Lutheran Church v. State Farm Fire and Cas. Co.,* 471 S.E.2d 124, 126 (N.C. Ct. App.

---

[8] While the Prior Policies are inapplicable to Plaintiff's claimed loss, they contain this same definition of "occurrence." [*See, e.g.,* Ex. 1, pp. 19-20; Ex. 2 p. 21 of 22; Ex. 3, p. 20 of 20; Ex. 5, p. 25 of 25; Ex. 6, p. 20 of 20].

13

1996) (examining narrower definition of "occurrence" and holding employee's writing of twenty-four checks were part of a "series of related acts" and constituted only one "occurrence").[9]

Accordingly, Fant's embezzlement scheme and Plaintiff's claimed loss were part of a continuous scheme constituting "a combined total of all separate acts" or a "series of acts," and as such, a single "occurrence." *See Dan Tait, Inc. v. Farm Fam. Cas. Ins. Co.*, 60 Misc. 3d 886, 892 (N.Y. Sup. Ct. 2018) ("[W]hile the 'series of [dishonest] acts' committed by [the employee] involved several different methods of theft—unauthorized withdrawals from [the insured's] credit line, unauthorized purchases with [the insured's] credit cards, and unauthorized taking [the insured's] inventory and property for his personal use . . . the clear and unambiguous language of the Policy requires these theft incidents to be aggregated into one 'occurrence.'").

This interpretation is further supported by the Prior Insurance Conditions, which are incorporated into the Insuring Agreements and contemplate that a single "occurrence" may take place over the course of multiple policy periods. Specifically, the Prior Insurance Conditions provide, in part, as follows:

> **l.   Loss Sustained During Prior Insurance Issued By Us Or Any Affiliate**
>
> **(1)   Loss Sustained Partly During This Insurance And Partly During Prior Insurance**
>
> If loss is "discovered" by a "designated person" during the Policy Period shown in the Declarations resulting directly from an 'occurrence' taking place:
>
> **(a)** Partly during the Policy Period shown in the Declarations; and

---

[9] *See e.g., Wescott Elec. Co. v. Cincinnati Ins. Co.*, 310 F. Supp. 3d 521, 527 (E.D. Pa. 2018) (employee's "series of acts" were "a single 'occurrence' because they were 'committed' by a single employee . . . both before and during the policy period."); *Piles Chevrolet Pontiac Buick, Inc. v. Auto Owners Ins. Co.*, No. 2011-CA-002317-MR, 2013 WL 2120319, at *2 (Ky. Ct. App. May 17, 2013) (same).

14

    **(b)** Partly during the policy period(s) of any prior cancelled or terminated insurance that we or any affiliate issued to you or any predecessor in interest;

   and this insurance became effective at the time of cancellation or termination of the prior insurance, we will first settle the amount of loss that you sustained during this Policy Period. We will then settle the remaining amount of loss that you sustained during the policy period(s) of the prior insurance.

 . . .

 **(3)** In settling loss under Paragraphs **(1)** and **(2)** above:

   **(a)** The most we will pay for the entire loss is the highest single Limit of Insurance applicable during the period of loss, whether such limit was written under this insurance or was written under the prior insurance issued by us.

   **(b)** We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under this insurance. If no loss was sustained under this insurance, we will apply the Deductible Amount shown in the Declarations to the amount of loss sustained under the most recent prior insurance.

   We will not apply any other deductible amount that may have been applicable to the loss.

[CR 00 21 06 22, pp. 10-11 of 21].

"In clear terms, the [Prior Insurance Conditions] state[] that [Plaintiff] may claim the highest single policy limit from 20[13] to 20[23] but cannot claim the cumulative total of those policy limits."*Farwest Pump Co. v. Secura Ins.*, 637 F. Supp. 3d 733, 742 (D. Ariz. 2022), *reconsideration denied*, No. CV-20-00465-TUC-JGZ, 2023 WL 1069685 (D. Ariz. Jan. 27, 2023), *appeal dismissed*, No. 23-15252, 2023 WL 9789846 (9th Cir. Nov. 17, 2023). Thus, when reading the applicable 2022-2023 Policy as a whole, including the above-cited Prior Insurance Conditions, Plaintiff is entitled to only one policy limit for the single "occurrence" spanning multiple policy periods and causing the loss for which it seeks coverage. *Madison Materials Co. v. St. Paul Fire*

*& Marine Ins. Co.,* 523 F.3d 541, 545 (5th Cir. 2008) (holding employee's related acts of embezzlement constituted one "occurrence" and pursuant to Prior Insurance Conditions, insurer was "only liable for one policy's limit if a single "occurrence" spans multiple policy periods or is covered by a prior insurance policy).[10]

Indeed, the Prior Insurance Conditions provide specific examples informing Plaintiff as to how a loss from an "occurrence" taking place over two or more policy periods will be adjusted.

**Example Number 2**

The Insured sustained a covered loss of $250,000 resulting directly from an "occurrence" taking place during the terms of Policy **A** and Policy **B.**

**Policy A**

The current policy. Written at a Limit of Insurance of $125,000 and a Deductible Amount of $10,000.

**Policy B**

Issued prior to Policy **A.** Written at a Limit of Insurance of $150,000 and a Deductible Amount of $25,000.

**Settlement Of Loss**

The amount of loss sustained under Policy **A** is $175,000 and under Policy **B,** $75,000.

The highest single Limit of Insurance applicable to this entire loss is $150,000 written under Policy **B.** The Policy **A** Deductible Amount of $10,000 applies. The loss is settled as follows:

**(a)** The amount of loss sustained under Policy **A** ($175,000) is settled first. The amount we will pay is the Policy **A** limit of $125,000 because $175,000 loss - $10,000 deductible = $165,000, which is greater than the $125,000 policy limit.

---

[10] *E.g., Superstition Crushing, LLC v. Travelers Cas. & Sur. Co. of Am.,* No. 2:07-CV-0694-HRH, 2008 WL 11338795, at *6 (D. Ariz. May 27, 2008), *aff'd,* 360 F. App'x 844 (9th Cir. 2009) (holding policy was unambiguous when it is read as whole noting that Prior Insurance Conditions "clearly state that the insured is entitled to only one policy limit for a single occurrence of employee dishonesty, even if that occurrence spans several policy periods.").

**(b)** The remaining amount of loss sustained under Policy **B** ($75,000) is settled next. The amount we will pay is $25,000 (i.e., $150,000 Policy **B** limit - $125,000 paid under Policy **A** = $25,000).

The most we will pay for this loss is $150,000.

[Doc. 2-2, pp. 12-13 of 22; *See also* Ex. 6, pp. 13-14]

Based on the above specific and unambiguous terms of the Prior Policies and operative 2022-2023 Policy and considering the Policies as a whole, Fant's embezzlement scheme resulting in Plaintiff's claimed loss constitutes a single "occurrence," and $50,000 is the maximum limit of liability recoverable. Because PLM has issued payment to Plaintiff in this amount, Plaintiff's complaint fails to state a claim upon which relief may be granted and must be dismissed in its entirety with prejudice.

## **CONCLUSION**

For the reasons addressed above, Plaintiff cannot recover under the Prior Policies because it did not discover the loss during the Prior Policies' effective policy periods. Each of the Policies covers only those losses that were "'discovered' by [Plaintiff] during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period to Discover Loss Condition." [*See* Exs. 1-6; Doc 2-2]. Plaintiff, itself, claims it discovered the loss in January 2023; thus, the only policy at issue is the 2022-2023 Policy. However, as explained above, Fant's embezzlement scheme constitutes a single "occurrence" as that term is defined by the 2022-2023 Policy, and PLM has issued payment in the amount of $50,000. Accordingly, Plaintiff is not entitled to a declaration that additional amounts are owed under the 2022-2023 Policy or coverage under the Prior Policies. Therefore, Plaintiff's complaint must be dismissed with prejudice as it fails to state a claim upon which relief can be granted.

Dated: June 10, 2024

*/s/ Kenneth W. Boyles, Jr.*
Kenneth W. Boyles, Jr.
PHELPS DUNBAR LLP
2025 3rd Avenue North
Suite 1000
Birmingham, Alabama 35203
T: (205) 716-5200
F: (205) 716-5389
Email: kenneth.boyles@phelps.com

*Attorney for Defendant Pennsylvania Lumbermens Mutual Insurance Company*

18

**CERTIFICATE OF SERVICE**

  This will certify that the undersigned has this day filed the above and foregoing document with the Clerk of this Court using the CM/ECF filing system which will send notification of same to all counsel of record.

  DATED, this the 10th day of June, 2024.

                */s/ Kenneth W. Boyles, Jr.*
                Kenneth W. Boyles, Jr.

PD.45720648.1