# PENNSYLVANIA LUMBERMENS MUTUAL INSURANCE COMPANY

2005 Market Street
Suite 1200
Philadelphia, PA 19103-7008

# COMMON POLICY DECLARATIONS

**POLICY NUMBER:** 03-W020-01-16        **PREVIOUS POLICY NUMBER:** 03-W020-01-14

| COMPANY NAME | PRODUCER NAME                          1773 |
|---|---|
| Pennsylvania Lumbermens Mutual Insurance Company<br>2005 Market Street<br>Suite 1200<br>Philadelphia, PA 19103-7008 | Woodus Humphrey & Company<br>7600 Fern Avenue<br>Bldg. 500<br>Shreveport, LA 71105 |

**NAMED INSURED:** White River Hardwoods Woodwork, Inc.
As Per Named Insured Extension Schedule

**MAILING ADDRESS:** 1197 Happy Hollow Road
Fayetteville, AR 72701

**POLICY PERIOD:  FROM** 07/01/2015 **TO** 07/01/2017

**AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.**

**BUSINESS DESCRIPTION** WOOD PRODUCTS MFG

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| | PREMIUM |
|---|---|
| COMMERCIAL PROPERTY COVERAGE PART | INCLUDED |
| COMMERCIAL CRIME COVERAGE PART | INCLUDED |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | INCLUDED |
| COMMERCIAL INLAND MARINE COVERAGE PART | INCLUDED |
| TERRORISM - CERTIFIED ACTS (GENERAL LIABILITY) | EXCLUDED |
| TERRORISM - CERTIFIED ACTS (INLAND MARINE) | EXCLUDED |
| TERRORISM - CERTIFIED ACTS (PROPERTY) | EXCLUDED |
| **TOTAL:** | |

IL DS 00 09 08                    © ISO Properties, Inc., 2007                    **Page 1 of 3**

Original

**POLICY NUMBER:** 03-W020-01-16

| FORMS APPLICABLE TO ALL COVERAGE PARTS (SHOW NUMBERS): |
|---|
| See Schedule of Forms and Endorsements. |

| Countersigned | By: |
|---|---|
| (Date) | (Authorized Representative) |

 ©ISO Properties, Inc., 2007
Original

POLICY NUMBER: 03-W020-01-16

**CRIME AND FIDELITY**
CR DS 01 08 13

# CRIME AND FIDELITY COVERAGE
# PART DECLARATIONS
# (COMMERCIAL ENTITIES)

The Crime And Fidelity Coverage Part (Commercial Entities) consists of this Declarations Form and the Commercial Crime Coverage Form.

**Coverage Is Written:**

☒ **Primary**    ☐ **Excess**    ☐ **Coindemnity**    ☐ **Concurrent**

| Employee Benefit Plan(s) Included As Insureds: |
|---|
| |

| | Insuring Agreements | Limit Of Insurance Per Occurrence | Deductible Amount Per Occurrence |
|---|---|---|---|
| 1. | Employee Theft | $50,000 | $1,000 |
| 2. | Forgery Or Alteration | Not Covered | |
| 3. | Inside The Premises - Theft Of Money And Securities | Not Covered | |
| 4. | Inside The Premises - Robbery Or Safe Burglary Of Other Property | Not Covered | |
| 5. | Outside The Premises | Not Covered | |
| 6. | Computer And Funds Transfer Fraud | Not Covered | |
| 7. | Money Orders And Counterfeit Money | Not Covered | |
| If "Not Covered" is inserted above opposite any specified Insuring Agreement, such Insuring Agreement and any other reference thereto in this Policy are deleted. | | | |

| If Added By Endorsement: | | |
|---|---|---|
| Insuring Agreement(s) | Limit Of Insurance Per Occurrence | Deductible Amount Per Occurrence |
| | | |
| **Endorsements Forming Part Of This Coverage Part When Issued:** | | |
| See Schedule of Forms and Endorsements | | |

© Insurance Services Office, Inc., 2012

| **Cancellation Of Prior Insurance Issued By Us:** |
|---|
| By acceptance of this Coverage Part you give us notice cancelling prior policy Numbers |
| ; the cancellation to be effective at the time this Coverage Part becomes effective. |

| **Countersignature Of Authorized Representative** |
|---|
| Name: |
| Title: |
| Signature: |
| Date: |

# SCHEDULE OF FORMS AND ENDORSEMENTS

| POLICY NUMBER:<br>03-W020-01-16 | EFFECTIVE DATE:<br>07/01/2015 |
|---|---|

**NUMBER**          **TITLE**

### COMMON

| | |
|---|---|
| IL DS 00 (09-08) | Common Policy Declarations |
| PLM-1 (10-01) | Mutual Policy Conditions |
| PN-1 (01-12) | Privacy Notice |
| IL 00 17 (11-98) | Common Policy Conditions |
| IL 00 21 (09-08) | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| IL 01 63 (09-07) | Arkansas Changes |
| IL 01 99 (09-08) | Arkansas Changes - Transfer Of Rights Of Recovery Against Others To Us |
| IL 02 31 (09-08) | Arkansas Changes - Cancellation And Nonrenewal |
| IL 09 35 (07-02) | Exclusion Of Certain Computer-Related Losses |
| IL 09 53 (01-08) | Exclusion of Certified Acts of Terrorism |
| GU-207 (01-02) | Equipment Breakdown Utility Interruption Endorsement |

### PROPERTY

| | |
|---|---|
| CP DS 00 (10-00) | Commercial Property Coverage Part Declarations |
| BM 1-Z (11-04) | Equipment Breakdown Endorsement Schedule |
| CP 12 32 (06-07) | Limitation On Loss Payment - Blanket Insurance (Margin Clause) |
| CP DS 04 (10-00) | Reported-Acquired-Incidental Locations Schedule |
| LUM-153a (01-08) | Notice to Policyholders |
| CP 00 10 (10-12) | Building And Personal Property Coverage Form |
| CP 00 30 (10-12) | Business Income (And Extra Expense) Coverage Form |
| CP 00 40 (10-12) | Legal Liability Coverage Form |
| CP 00 90 (07-88) | Commercial Property Conditions |
| SLP-2 (01-97) | Special Lumber Pak Extension of Coverage Endorsement |
| LUM-130 (06-04) | Special Lumber Pak Clarifying Endorsement |
| CP 01 40 (07-06) | Exclusion Of Loss Due To Virus Or Bacteria |
| CP 02 99 (06-07) | Cancellation Changes |
| CP 03 20 (10-92) | Multiple Deductible Form |
| CP 03 21 (10-12) | Windstorm Or Hail Percentage Deductible |
| CP 03 29 (10-12) | Deductibles By Location |
| CP 10 30 (10-12) | Causes of Loss - Special Form |
| GU 207 B (07-14) | Coverage For Roof Surfacing |
| CP 12 18 (06-07) | Loss Payable Provisions |
| CP 13 10 (04-02) | Value Reporting Form |
| CP 14 20 (07-88) | Additional Property Not Covered |
| EB 00 20 (01-13) | Equipment Breakdown Protection Coverage Form |
| EB 99 63 (09-10) | Off-Premises Equipment Coverage |
| EB 99 62 (09-10) | Covered Equipment Deductible Waiver |
| GU 207 ME (08-11) | "Covered Equipment" and Definitions Endorsement |

### GENERAL LIABILITY

| | |
|---|---|
| CG DS 01 (10-01) | Commercial General Liability Declarations |
| LUM-150 (01-08) | Notice to Policyholders |
| LUM-151 (01-08) | Notice to Policyholders |
| CG 00 01 (04-13) | Commercial General Liability Coverage Form |
| CG 01 42 (07-11) | Arkansas Changes |
| CG 01 43 (07-11) | Arkansas Changes |

# SCHEDULE OF FORMS AND ENDORSEMENTS

| POLICY NUMBER: | EFFECTIVE DATE: |
|---|---|
| 03-W020-01-16 | 07/01/2015 |

**NUMBER**                    **TITLE**

### GENERAL LIABILITY

| | |
|---|---|
| CG 21 06 (05-14) | Exclusion - Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability - With Limited Bodily Injury Exception |
| CG 21 45 (07-98) | Exclusion - Damage To Premises Rented To You |
| CG 21 47 (12-07) | Employment-Related Practices Exclusion |
| CG 21 55 (09-99) | Total Pollution Exclusion With A Hostile Fire Exception |
| CG 21 67 (12-04) | Fungi or Bacteria Exclusion |
| CG 21 75 (06-08) | Exclusion of Certified Acts of Terrorism and Exclusion Of Other Acts of Terrorism Committed Outside The United States |
| CG 21 86 (12-04) | Exclusion - Exterior Insulation and Finish Systems |
| CG 21 96 (03-05) | Silica Or Silica-Related Dust Exclusion |
| CG 26 08 (04-90) | Arkansas Changes - Multi-Year Policies |
| LUM-123 (02-01) | Asbestos Exclusion |
| LUM-145 (02-06) | Broad Form Additional Insured |
| GU207 06-78 | CROSS SUITS LIABILITY EXCLUSION |
| EB-6 (10-82) | Employee Benefit Programs Liability Endorsement |

### INLAND MARINE

| | |
|---|---|
| CM DS 02 (09-00) | Commercial Inland Marine Declarations |
| IM 755 (02-10) | Bridging Endorsement |
| CM 00 01 (09-04) | Commercial Inland Marine Conditions |
| LUM-148 (02-08) | Annual Transportation Floater Plus |
| LUM-158 (10-08) | Contractors' Equipment Coverage Form |
| GU207 06-78 | CONTRACTORS EQUIPMENT LOSS PAYEE |

### CRIME

| | |
|---|---|
| CR DS 01 (08-13) | Commercial Crime Coverage Part Declarations |
| CR 00 21 (08-13) | Commercial Crime Coverage Form (Loss Sustained Form) |
| CR 07 50 (08-08) | Amendment - Delete Provisions Regarding Certain Acts of Terrorism (Applicable to Crime/Fidelity Only) |

CRIME AND FIDELITY
CR 00 21 08 13

# COMMERCIAL CRIME COVERAGE FORM
# (LOSS SUSTAINED FORM)

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is or is not covered.

Throughout this Policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which a Limit Of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place during the Policy Period shown in the Declarations, except as provided in Condition **E.1.k.** or **E.1.l.**, which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss Condition **E.1.g.:**

### 1. Employee Theft

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" shall also include forgery.

### 2. Forgery Or Alteration

**a.** We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, orders or directions to pay a sum certain in "money" that are:

**(1)** Made or drawn by or drawn upon you; or

**(2)** Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

**b.** If you are sued for refusing to pay any instrument covered in Paragraph **2.a.,** on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay for such legal expenses is in addition to the Limit Of Insurance applicable to this Insuring Agreement.

### 3. Inside The Premises – Theft Of Money And Securities

We will pay for:

**a.** Loss of "money" and "securities" inside the "premises" or "financial institution premises":

**(1)** Resulting directly from "theft" committed by a person present inside such "premises" or "financial institution premises"; or

**(2)** Resulting directly from disappearance or destruction.

**b.** Loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities", if you are the owner of the "premises" or are liable for damage to it.

**c.** Loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of, or unlawful entry into, those containers.

### 4. Inside The Premises – Robbery Or Safe Burglary Of Other Property

We will pay for:

**a.** Loss of or damage to "other property":

**(1)** Inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or

**(2)** Inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".

**b.** Loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "robbery" or "safe burglary" of "other property", if you are the owner of the "premises" or are liable for damage to it.

**c.** Loss of or damage to a locked safe or vault located inside the "premises" resulting directly from an actual or attempted "robbery" or "safe burglary".

**5. Outside The Premises**

We will pay for:

**a.** Loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

**b.** Loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

**6. Computer And Funds Transfer Fraud**

**a.** We will pay for:

**(1)** Loss resulting directly from a fraudulent:

**(a)** Entry of "electronic data" or "computer program" into; or

**(b)** Change of "electronic data" or "computer program" within;

any "computer system" owned, leased or operated by you, provided the fraudulent entry or fraudulent change causes, with regard to Paragraphs **6.a.(1)(a)** and **6.a.(1)(b)**:

**(i)** "Money", "securities" or "other property" to be transferred, paid or delivered; or

**(ii)** Your account at a "financial institution" to be debited or deleted.

**(2)** Loss resulting directly from a "fraudulent instruction" directing a "financial institution" to debit your "transfer account" and transfer, pay or deliver "money" or "securities" from that account.

**b.** As used in Paragraph **6.a.(1)**, fraudulent entry or fraudulent change of "electronic data" or "computer program" shall include such entry or change made by an "employee" acting, in good faith, upon a "fraudulent instruction" received from a computer software contractor who has a written agreement with you to design, implement or service "computer programs" for a "computer system" covered under this Insuring Agreement.

**7. Money Orders And Counterfeit Money**

We will pay for loss resulting directly from your having, in good faith, accepted in exchange for merchandise, "money" or services:

**a.** Money orders issued by any post office, express company or "financial institution" that are not paid upon presentation; or

**b.** "Counterfeit money" that is acquired during the regular course of business.

**B. Limit Of Insurance**

The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit Of Insurance shown in the Declarations.

If any loss is covered under more than one Insuring Agreement or coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any one of those Insuring Agreements or coverages.

**C. Deductible**

We will not pay for loss resulting directly from an "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

**D. Exclusions**

**1.** This insurance does not cover:

**a. Acts Committed By You, Your Partners Or Your Members**

Loss resulting from "theft" or any other dishonest act committed by:

**(1)** You; or

**(2)** Any of your partners or "members";

whether acting alone or in collusion with other persons.

**b. Acts Committed By Your Employees Learned Of By You Prior To The Policy Period**

Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this insurance and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of such "theft" or dishonest act prior to the Policy Period shown in the Declarations.

**c. Acts Committed By Your Employees, Managers, Directors, Trustees Or Representatives**

Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

**(1)** Whether acting alone or in collusion with other persons; or

**(2)** While performing services for you or otherwise;

except when covered under Insuring Agreement **A.1.**

**d. Confidential Or Personal Information**

Loss resulting from:

**(1)** The disclosure of your or another person's or organization's confidential or personal information including, but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The use of another person's or organization's confidential or personal information including, but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

**e. Data Security Breach**

Fees, costs, fines, penalties and other expenses incurred by you which are related to the access to or disclosure of another person's or organization's confidential or personal information including, but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

**f. Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

**g. Indirect Loss**

Loss that is an indirect result of an "occurrence" covered by this insurance including, but not limited to, loss resulting from:

**(1)** Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property";

**(2)** Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance; or

**(3)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

**h. Legal Fees, Costs And Expenses**

Fees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement **A.2.**

**i. Nuclear Hazard**

Loss or damage resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**j. Pollution**

Loss or damage caused by or resulting from pollution. Pollution means the discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**k. War And Military Action**

Loss or damage resulting from:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

2. Insuring Agreement **A.1.** does not cover:

   a. **Inventory Shortages**

   Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

   **(1)** An inventory computation; or

   **(2)** A profit and loss computation.

   However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

   b. **Trading**

   Loss resulting from trading, whether in your name or in a genuine or fictitious account.

   c. **Warehouse Receipts**

   Loss resulting from the fraudulent or dishonest signing, issuing, cancelling or failing to cancel, a warehouse receipt or any papers connected with it.

3. Insuring Agreements **A.3.**, **A.4.** and **A.5.** do not cover:

   a. **Accounting Or Arithmetical Errors Or Omissions**

   Loss resulting from accounting or arithmetical errors or omissions.

   b. **Exchanges Or Purchases**

   Loss resulting from the giving or surrendering of property in any exchange or purchase.

   c. **Fire**

   Loss or damage resulting from fire, however caused, except:

   **(1)** Loss of or damage to "money" and "securities"; and

   **(2)** Loss from damage to a safe or vault.

   d. **Money Operated Devices**

   Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

   e. **Motor Vehicles Or Equipment And Accessories**

   Loss of or damage to motor vehicles, trailers or semitrailers or equipment and accessories attached to them.

f. **Transfer Or Surrender Of Property**

   **(1)** Loss of or damage to property after it has been transferred or surrendered to a person or place outside the "premises" or "financial institution premises":

   **(a)** On the basis of unauthorized instructions; or

   **(b)** As a result of a threat including, but not limited to:

   **(i)** A threat to do bodily harm to any person;

   **(ii)** A threat to do damage to any property;

   **(iii)** A threat to introduce a denial of service attack into any "computer system";

   **(iv)** A threat to introduce a virus or other malicious instruction into any "computer system" which is designed to damage, destroy or corrupt "electronic data" or "computer programs" stored within the "computer system";

   **(v)** A threat to contaminate, pollute or render substandard your products or goods; or

   **(vi)** A threat to disseminate, divulge or utilize:

   **i.** Your confidential information;

   **ii.** Confidential or personal information of another person or organization; or

   **iii.** Weaknesses in the source code within any "computer system".

   **(2)** But, this exclusion does not apply under Insuring Agreement **A.5.** to loss of "money", "securities" or "other property" while outside the "premises" in the care and custody of a "messenger" if you:

   **(a)** Had no knowledge of any threat at the time the conveyance began; or

   **(b)** Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

g. **Vandalism**

   Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property" by vandalism or malicious mischief.

© Insurance Services Office, Inc., 2012
CR 00 21 08 13

### h. Voluntary Parting Of Title To Or Possession Of Property

Loss resulting from your, or anyone else acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**4.** Insuring Agreement **A.6.** does not cover:

### a. Authorized Access

Loss resulting from a fraudulent:

**(1)** Entry of "electronic data" or "computer program" into; or

**(2)** Change of "electronic data" or "computer program" within;

any "computer system" owned, leased or operated by you by a person or organization with authorized access to that "computer system", except when covered under Insuring Agreement **A.6.b.**

### b. Credit Card Transactions

Loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

### c. Exchanges Or Purchases

Loss resulting from the giving or surrendering of property in any exchange or purchase.

### d. Fraudulent Instructions

Loss resulting from an "employee" or "financial institution" acting upon any instruction to:

**(1)** Transfer, pay or deliver "money", "securities" or "other property"; or

**(2)** Debit or delete your account;

which instruction proves to be fraudulent, except when covered under Insuring Agreement **A.6.a.(2)** or **A.6.b.**

### e. Inventory Shortages

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

## E. Conditions

The following conditions apply in addition to the Common Policy Conditions:

### 1. Conditions Applicable To All Insuring Agreements

#### a. Additional Premises Or Employees

If, while this insurance is in force, you establish any additional "premises" or hire additional "employees", other than through consolidation or merger with, or purchase or acquisition of assets or liabilities of, another entity, such "premises" and "employees" shall automatically be covered under this insurance. Notice to us of an increase in the number of "premises" or "employees" is not required, and no additional premium will be charged for the remainder of the Policy Period shown in the Declarations.

#### b. Concealment, Misrepresentation Or Fraud

This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other Insured, at any time, intentionally conceals or misrepresents a material fact concerning:

**(1)** This insurance;

**(2)** The property covered under this insurance;

**(3)** Your interest in the property covered under this insurance; or

**(4)** A claim under this insurance.

#### c. Consolidation – Merger Or Acquisition

If you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

**(1)** You must give us written notice as soon as possible and obtain our written consent to extend the coverage provided by this insurance to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

**(2)** For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this insurance shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

**d. Cooperation**

You must cooperate with us in all matters pertaining to this insurance as stated in its terms and conditions.

**e. Duties In The Event Of Loss**

After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property", you must:

**(1)** Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreement **A.1.** or **A.2.**) involves a violation of law, you must also notify the local law enforcement authorities;

**(2)** Give us a detailed, sworn proof of loss within 120 days;

**(3)** Cooperate with us in the investigation and settlement of any claim;

**(4)** Produce for our examination all pertinent records;

**(5)** Submit to examination under oath at our request and give us a signed statement of your answers; and

**(6)** Secure all of your rights of recovery against any person or organization responsible for the loss and do nothing to impair those rights.

**f. Employee Benefit Plans**

The "employee benefit plans" shown in the Declarations (hereinafter referred to as Plan) are included as Insureds under Insuring Agreement **A.1.,** subject to the following:

**(1)** If any Plan is insured jointly with any other entity under this insurance, you or the Plan Administrator is responsible for selecting a Limit of Insurance for Insuring Agreement **A.1.** that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required under ERISA as if each Plan were separately insured.

**(2)** With respect to loss sustained or "discovered" by any such Plan, Insuring Agreement **A.1.** is replaced by the following:

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

**(3)** If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

**(4)** If two or more Plans are insured under this insurance, any payment we make for loss:

**(a)** Sustained by two or more Plans; or

**(b)** Of commingled "money", "securities" or "other property" of two or more Plans;

resulting directly from an "occurrence", will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required under ERISA for each Plan bears to the total of those limits.

**(5)** The Deductible Amount applicable to Insuring Agreement **A.1.** does not apply to loss sustained by any Plan.

**g. Extended Period To Discover Loss**

We will pay for loss that you sustained prior to the effective date of cancellation of this insurance, which is "discovered" by you:

**(1)** No later than one year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(2)** No later than one year from the date of that cancellation with regard to any "employee benefit plan".

**h. Joint Insured**

**(1)** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

**(2)** If any Insured, or partner, "member" or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

**(3)** An "employee" of any Insured is considered to be an "employee" of every Insured.

**(4)** If this insurance or any of its coverages are cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by:

**(a)** No later than one year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(b)** No later than one year from the date of that cancellation with regard to any "employee benefit plan".

**(5)** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

**(6)** Payment by us to the first Named Insured for loss sustained by any Insured, or payment by us to any "employee benefit plan" for loss sustained by that Plan, shall fully release us on account of such loss.

**i. Legal Action Against Us**

You may not bring any legal action against us involving loss:

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of loss with us; and

**(3)** Unless brought within two years from the date you "discovered" the loss.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**j. Liberalization**

If we adopt any revision that would broaden the coverage under this insurance without additional premium within 45 days prior to or during the Policy Period shown in the Declarations, the broadened coverage will immediately apply to this insurance.

**k. Loss Sustained During Prior Insurance Issued By Us Or Any Affiliate**

**(1) Loss Sustained Partly During This Insurance And Partly During Prior Insurance**

If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place:

**(a)** Partly during the Policy Period shown in the Declarations; and

**(b)** Partly during the policy period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest;

and this insurance became effective at the time of cancellation of the prior insurance, we will first settle the amount of loss that you sustained during this policy period. We will then settle the remaining amount of loss that you sustained during the policy period(s) of the prior insurance.

**(2) Loss Sustained Entirely During Prior Insurance**

If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place entirely during the policy period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest, we will pay for the loss, provided:

**(a)** This insurance became effective at the time of cancellation of the prior insurance; and

**(b)** The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

We will first settle the amount of loss that you sustained during the most recent prior insurance. We will then settle any remaining amount of loss that you sustained during the policy period(s) of any other prior insurance.

**(3)** In settling loss under Paragraphs **k.(1)** and **k.(2):**

**(a)** The most we will pay for the entire loss is the highest single Limit of Insurance applicable during the period of loss, whether such limit was written under this insurance or was written under the prior insurance issued by us.

**(b)** We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under this insurance. If no loss was sustained under this insurance, we will apply the Deductible Amount shown in the Declarations to the amount of loss sustained under the most recent prior insurance.

If the Deductible Amount is larger than the amount of loss sustained under this insurance, or the most recent prior insurance, we will apply the remaining Deductible Amount to the remaining amount of loss sustained during the prior insurance.

We will not apply any other Deductible Amount that may have been applicable to the loss.

**(4)** The following examples demonstrate how we will settle losses subject to this condition:

**Example Number 1**

The Insured sustained a covered loss of $10,000 resulting directly from an "occurrence" taking place during the terms of Policy **A** and Policy **B.**

**Policy A**

The current policy. Written at a Limit of Insurance of $50,000 and a Deductible Amount of $5,000.

**Policy B**

Issued prior to Policy **A.** Written at a Limit of Insurance of $50,000 and a Deductible Amount of $5,000.

The amount of loss sustained under Policy **A** is $2,500 and under Policy **B,** $7,500.

The highest single Limit of Insurance applicable to this entire loss is $50,000 written under Policy **A.** The Policy **A** Deductible Amount of $5,000 applies. The loss is settled as follows:

**(a)** The amount of loss sustained under Policy **A** ($2,500) is settled first. The amount we will pay is nil ($0.00) because the amount of loss is less than the Deductible Amount (i.e., $2,500 loss - $5,000 deductible = $0.00).

**(b)** The remaining amount of loss sustained under Policy **B** ($7,500) is settled next. The amount recoverable is $5,000 after the remaining Deductible Amount from Policy **A** of $2,500 is applied to the loss (i.e., $7,500 loss - $2,500 deductible = $5,000).

The most we will pay for this loss is $5,000.

**Example Number 2**

The Insured sustained a covered loss of $250,000 resulting directly from an "occurrence" taking place during the terms of Policy **A** and Policy **B.**

**Policy A**

The current policy. Written at a Limit of Insurance of $125,000 and a Deductible Amount of $10,000.

**Policy B**

Issued prior to Policy **A.** Written at a Limit of Insurance of $150,000 and a Deductible Amount of $25,000.

The amount of loss sustained under Policy **A** is $175,000 and under Policy **B,** $75,000.

The highest single Limit of Insurance applicable to this entire loss is $150,000 written under Policy **B.** The Policy **A** Deductible Amount of $10,000 applies. The loss is settled as follows:

**(a)** The amount of loss sustained under Policy **A** ($175,000) is settled first. The amount we will pay is the Policy **A** Limit of $125,000 because $175,000 loss - $10,000 deductible = $165,000, which is greater than the $125,000 policy limit.

**(b)** The remaining amount of loss sustained under Policy **B** ($75,000) is settled next. The amount we will pay is $25,000 (i.e., $150,000 Policy **B** limit - $125,000 paid under Policy **A** = $25,000).

The most we will pay for this loss is $150,000.

**Example Number 3**

The Insured sustained a covered loss of $2,000,000 resulting directly from an "occurrence" taking place during the terms of Policies **A, B, C** and **D.**

**Policy A**

The current policy. Written at a Limit of Insurance of $1,000,000 and a Deductible Amount of $100,000.

**Policy B**

Issued prior to Policy **A.** Written at a Limit of Insurance of $750,000 and a Deductible Amount of $75,000.

**Policy C**

Issued prior to Policy **B.** Written at a Limit of Insurance of $500,000 and a Deductible Amount of $50,000.

**Policy D**

Issued prior to Policy **C.** Written at a Limit of Insurance of $500,000 and a Deductible Amount of $50,000.

The amount of loss sustained under Policy **A** is $350,000; under Policy **B,** $250,000; under Policy **C,** $600,000; and under Policy **D,** $800,000.

The highest single Limit of Insurance applicable to this entire loss is $1,000,000 written under Policy **A.** The Policy **A** Deductible Amount of $100,000 applies. The loss is settled as follows:

**(a)** The amount of loss sustained under Policy **A** ($350,000) is settled first. The amount we will pay is $250,000 (i.e., $350,000 loss - $100,000 deductible = $250,000).

**(b)** The amount of loss sustained under Policy **B** ($250,000) is settled next. The amount we will pay is $250,000 (no deductible is applied).

**(c)** The amount of loss sustained under Policy **C** ($600,000) is settled next. The amount we will pay is $500,000, the policy limit (no deductible is applied).

**(d)** We will not make any further payment under Policy **D,** as the maximum amount payable under the highest single Limit of Insurance applying to the loss of $1,000,000 under Policy **A** has been satisfied.

The most we will pay for this loss is $1,000,000.

**I. Loss Sustained During Prior Insurance Not Issued By Us Or Any Affiliate**

**(1)** If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place during the policy period of any prior cancelled insurance that was issued to you or a predecessor in interest by another company, and the period of time to discover loss under that insurance had expired, we will pay for the loss under this insurance, provided:

**(a)** This insurance became effective at the time of cancellation of the prior insurance; and

**(b)** The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

**(2)** In settling loss subject to this condition:

**(a)** The most we will pay for the entire loss is the lesser of the Limits of Insurance applicable during the period of loss, whether such limit was written under this insurance or was written under the prior cancelled insurance.

**(b)** We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under the prior cancelled insurance.

**(3)** The insurance provided under this condition is subject to the following:

**(a)** If loss covered under this condition is also partially covered under Condition **E.1.k.**, the amount recoverable under this condition is part of, not in addition to, the amount recoverable under Condition **E.1.k.**

**(b)** For loss covered under this condition that is not subject to Paragraph **l.(3)(a)**, the amount recoverable under this condition is part of, not in addition to, the Limit of Insurance applicable to the loss covered under this insurance and is limited to the lesser of the amount recoverable under:

**(i)** This insurance as of its effective date; or

**(ii)** The prior cancelled insurance had it remained in effect.

**m. Other Insurance**

If other valid and collectible insurance is available to you for loss covered under this insurance, our obligations are limited as follows:

**(1) Primary Insurance**

When this insurance is written as primary insurance, and:

**(a)** You have other insurance subject to the same terms and conditions as this insurance, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit Of Insurance shown in the Declarations bears to the total limit of all insurance covering the same loss.

**(b)** You have other insurance covering the same loss other than that described in Paragraph **m.(1)(a)**, we will only pay for the amount of loss that exceeds:

**(i)** The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

**(ii)** The Deductible Amount shown in the Declarations;

whichever is greater. Our payment for loss is subject to the terms and conditions of this insurance.

**(2) Excess Insurance**

**(a)** When this insurance is written excess over other insurance, we will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this insurance.

**(b)** However, if loss covered under this insurance is subject to a deductible, we will reduce the Deductible Amount shown in the Declarations by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance**.**

**n. Ownership Of Property; Interests Covered**

The property covered under this insurance is limited to property:

**(1)** That you own or lease;

**(2)** That is held by you in any capacity; or

**(3)** For which you are legally liable, provided you were liable for the property prior to the time the loss was sustained.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

**o. Records**

You must keep records of all property covered under this insurance so we can verify the amount of any loss.

**p. Recoveries**

**(1)** Any recoveries, whether effected before or after any payment under this insurance, whether made by us or by you, shall be applied net of the expense of such recovery:

**(a)** First, to you in satisfaction of your covered loss in excess of the amount paid under this insurance;

**(b)** Second, to us in satisfaction of amounts paid in settlement of your claim;

**(c)** Third, to you in satisfaction of any Deductible Amount; and

© Insurance Services Office, Inc., 2012

**(d)** Fourth, to you in satisfaction of any loss not covered under this insurance.

**(2)** Recoveries do not include any recovery:

**(a)** From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

**(b)** Of original "securities" after duplicates of them have been issued.

### q. Territory

This insurance covers loss that you sustain resulting directly from an "occurrence" taking place within the United States of America (including its territories and possessions), Puerto Rico and Canada.

### r. Transfer Of Your Rights Of Recovery Against Others To Us

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

### s. Valuation – Settlement

The value of any loss for purposes of coverage under this insurance shall be determined as follows:

**(1) Money**

Loss of "money" but only up to and including its face value. We will, at your option, pay for loss of "money" issued by any country other than the United States of America:

**(a)** At face value in the "money" issued by that country; or

**(b)** In the United States of America dollar equivalent, determined by the rate of exchange published in The Wall Street Journal on the day the loss was "discovered".

**(2) Securities**

Loss of "securities" but only up to and including their value at the close of business on the day the loss was "discovered". We may, at our option:

**(a)** Pay the market value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

**(b)** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

**(i)** Market value of the "securities" at the close of business on the day the loss was "discovered"; or

**(ii)** Limit of Insurance applicable to the "securities".

**(3) Property Other Than Money And Securities**

**(a)** Loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

**(i)** The Limit of Insurance applicable to the lost or damaged property;

**(ii)** The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose; or

**(iii)** The amount you actually spend that is necessary to repair or replace the lost or damaged property.

**(b)** We will not pay on a replacement cost basis for any loss or damage to property covered under Paragraph **s.(3)(a):**

**(i)** Until the lost or damaged property is actually repaired or replaced; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

**(c)** We will, at your option, pay for loss or damage to such property:

**(i)** In the "money" of the country in which the loss or damage was sustained; or

**(ii)** In the United States of America dollar equivalent of the "money" of the country in which the loss or damage was sustained, determined by the rate of exchange published in The Wall Street Journal on the day the loss was "discovered".

**(d)** Any property that we pay for or replace becomes our property.

**2. Conditions Applicable To Insuring Agreement A.1.**

**a. Termination As To Any Employee**

This Insuring Agreement terminates as to any "employee":

**(1)** As soon as:

**(a)** You; or

**(b)** Any of your partners, "members", "managers", officers, directors or trustees not in collusion with the "employee";

learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you; or

**(2)** On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**b. Territory**

We will pay for loss caused by any "employee" while temporarily outside the territory specified in Territory Condition **E.1.q.** for a period of not more than 90 consecutive days.

**3. Conditions Applicable To Insuring Agreement A.2.**

**a. Deductible Amount**

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement **A.2.**

**b. Electronic And Mechanical Signatures**

We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

**c. Proof Of Loss**

You must include with your proof of loss any instrument involved in that loss or, if that is not possible, an affidavit setting forth the amount and cause of loss.

**d. Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.q.** does not apply to Insuring Agreement **A.2.**

**4. Conditions Applicable To Insuring Agreements A.4. And A.5.**

**a. Armored Motor Vehicle Companies**

Under Insuring Agreement **A.5.**, we will only pay for the amount of loss you cannot recover:

**(1)** Under your contract with the armored motor vehicle company; and

**(2)** From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

**b. Special Limit Of Insurance For Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to:

**(1)** Precious metals, precious or semiprecious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

**(2)** Manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**5. Conditions Applicable To Insuring Agreement A.6.**

**a. Special Limit Of Insurance For Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**b. Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.q.** does not apply to Insuring Agreement **A.6.**

© Insurance Services Office, Inc., 2012

**F. Definitions**

1. "Computer program" means a set of related electronic instructions, which direct the operation and function of a computer or devices connected to it, which enable the computer or devices to receive, process, store or send "electronic data".

2. "Computer system" means:

   a. Computers, including Personal Digital Assistants (PDAs) and other transportable or handheld devices, electronic storage devices and related peripheral components;

   b. Systems and applications software; and

   c. Related communications networks;

   by which "electronic data" is collected, transmitted, processed, stored or retrieved.

3. "Counterfeit money" means an imitation of "money" which is intended to deceive and to be taken as genuine.

4. "Custodian" means you, or any of your partners or "members", or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

5. "Discover" or "discovered" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

   "Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this insurance.

6. "Electronic data" means information, facts, images or sounds stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software) on data storage devices, including hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

7. "Employee":

   a. Means:

      (1) Any natural person:

         (a) While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any dishonest act committed by the "employee";

         (b) Whom you compensate directly by salary, wages or commissions; and

         (c) Whom you have the right to direct and control while performing services for you;

      (2) Any natural person who is furnished temporarily to you:

         (a) To substitute for a permanent "employee", as defined in Paragraph **7.a.(1),** who is on leave; or

         (b) To meet seasonal or short-term work load conditions;

         while that person is subject to your direction and control and performing services for you;

      (3) Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary "employee" as defined in Paragraph **7.a.(2);**

      (4) Any natural person who is:

         (a) A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan"; or

         (b) Your director or trustee while that person is engaged in handling "money", "securities" or "other property" of any "employee benefit plan";

      (5) Any natural person who is a former "employee", partner, "member", "manager", director or trustee retained by you as a consultant while performing services for you;

      (6) Any natural person who is a guest student or intern pursuing studies or duties;

(7) Any natural person employed by an entity merged or consolidated with you prior to the effective date of this Policy; and

(8) Any natural person who is your "manager", director or trustee while:

    (a) Performing acts within the scope of the usual duties of an "employee"; or

    (b) Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

**b.** Does not mean:

Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in Paragraph **7.a.**

**8.** "Employee benefit plan" means any welfare or pension benefit plan shown in the Declarations that you sponsor and that is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

**9.** "Financial institution" means:

**a.** With regard to Insuring Agreement **A.3.:**

(1) A bank, savings bank, savings and loan association, trust company, credit union or similar depository institution; or

(2) An insurance company.

**b.** With regard to Insuring Agreement **A.6.:**

(1) A bank, savings bank, savings and loan association, trust company, credit union or similar depository institution;

(2) An insurance company; or

(3) A stock brokerage firm or investment company.

**10.** "Financial institution premises" means the interior of that portion of any building occupied by a "financial institution".

**11.** "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

**12.** "Fraudulent instruction" means:

**a.** With regard to Insuring Agreement **A.6.a.(2):**

(1) A computer, telegraphic, cable, teletype, telefacsimile, telephone or other electronic instruction directing a "financial institution" to debit your "transfer account" and to transfer, pay or deliver "money" or "securities" from that "transfer account", which instruction purports to have been issued by you, but which in fact was fraudulently issued by someone else without your knowledge or consent.

(2) A written instruction (other than those covered under Insuring Agreement **A.2.**) issued to a "financial institution" directing the "financial institution" to debit your "transfer account" and to transfer, pay or deliver "money" or "securities" from that "transfer account", through an electronic funds transfer system at specified times or under specified conditions, which instruction purports to have been issued by you, but which in fact has issued, forged or altered by someone else without your knowledge or consent.

(3) A computer, telegraphic, cable, teletype, telefacsimile, telephone or other electronic or written instruction initially received by you, which instruction purports to have been issued by an "employee", but which in fact was fraudulently issued by someone else without your or the "employee's" knowledge or consent.

**b.** With regard to Insuring Agreement **A.6.b.:**

A computer, telegraphic, cable, teletype, telefacsimile, telephone or other electronic, written or voice instruction directing an "employee" to enter or change "electronic data" or "computer programs" within a "computer system" covered under the Insuring Agreement, which instruction in fact was fraudulently issued by your computer software contractor.

**13.** "Manager" means a natural person serving in a directorial capacity for a limited liability company.

**14.** "Member" means an owner of a limited liability company represented by its membership interest who, if a natural person, may also serve as a "manager".

15. "Messenger" means you, or your relative, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

16. "Money" means:

  a. Currency, coins and bank notes in current use and having a face value;

  b. Traveler's checks and money orders held for sale to the public; and

  c. In addition, includes:

    (1) Under Insuring Agreements **A.1.** and **A.2.,** deposits in your account at any financial institution; and

    (2) Under Insuring Agreement **A.6.,** deposits in your account at a "financial institution" as defined in Paragraph **F.9.b.**

17. "Occurrence" means:

  a. Under Insuring Agreement **A.1.:**

    (1) An individual act;

    (2) The combined total of all separate acts whether or not related; or

    (3) A series of acts whether or not related;

    committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, except as provided under Condition **E.1.k.** or **E.1.l.**

  b. Under Insuring Agreement **A.2.:**

    (1) An individual act;

    (2) The combined total of all separate acts whether or not related; or

    (3) A series of acts whether or not related;

    committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations, except as provided under Condition **E.1.k.** or **E.1.l.**

  c. Under all other Insuring Agreements:

    (1) An individual act or event;

    (2) The combined total of all separate acts or events whether or not related; or

    (3) A series of acts or events whether or not related;

    committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, except as provided under Condition **E.1.k.** or **E.1.l.**

18. "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include "computer programs", "electronic data" or any property specifically excluded under this insurance.

19. "Premises" means the interior of that portion of any building you occupy in conducting your business.

20. "Robbery" means the unlawful taking of property from the care and custody of a person by one who has:

  a. Caused or threatened to cause that person bodily harm; or

  b. Committed an obviously unlawful act witnessed by that person.

21. "Safe burglary" means the unlawful taking of:

  a. Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

  b. A safe or vault from inside the "premises".

22. "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

  a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

  b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

  but does not include "money".

23. "Theft" means the unlawful taking of property to the deprivation of the Insured.

24. "Transfer account" means an account maintained by you at a "financial institution" from which you can initiate the transfer, payment or delivery of "money" or "securities":

  a. By means of computer, telegraphic, cable, teletype, telefacsimile, telephone or other electronic instructions; or

  b. By means of written instructions (other than those covered under Insuring Agreement **A.2.**) establishing the conditions under which such transfers are to be initiated by such "financial institution" through an electronic funds transfer system.

25. "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

  © Insurance Services Office, Inc., 2012

CRIME AND FIDELITY
CR 07 50 08 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT – DELETE PROVISIONS REGARDING CERTAIN ACTS OF TERRORISM (APPLICABLE TO CRIME/FIDELITY ONLY)

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
GOVERNMENT CRIME COVERAGE FORM
KIDNAP/RANSOM AND EXTORTION COVERAGE FORM

Any endorsement in this policy that refers to "certified act(s) of terrorism" is hereby amended to the effect that such endorsement does not apply to the Commercial Crime Coverage Form, Government Crime Coverage Form or Kidnap/Ransom And Extortion Coverage Form.

The inapplicability or omission of a terrorism exclusion does not serve to create coverage for any loss or damage that would otherwise be excluded under this Coverage Form, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

© Insurance Services Office, Inc., 2008